Receipt number 9998-4300721

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

**FILED**

Nov 7 2017

U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| ACI-SCC JV,<br><br>ACI-SCC JV LLC, AND<br><br>ADVANCED CONSTRUCTORS INTERNATIONAL LLC,<br><br>THROUGH THEIR TRUSTEE, ARWAND ROAD AND CONSTRUCTION COMPANY,<br>    Plaintiffs,<br><br>      v.<br><br>UNITED STATES OF AMERICA,<br>    Defendant | Case No. 17-1749 C |

## COMPLAINT

1.      ACI-SCC JV, ACI-SCC JV LLC and Advanced Constructors International LLC ("ACI"), through their Trustee, Arwand Road and Construction Company ("Arwand"), for their Complaint against the United States Army Corps of Engineers ("USACE") demands payment for the amounts due from the United States for its breach of contract, demand for satisfaction of the accords, breach of its duty of good faith and fair dealing, for the pass-though claim of Plaintiffs' subcontractor, Arwand and for economic duress.

## PARTIES

2.      ACI-SCC JV LLC was a Delaware limited liability company identified by file number 4828801. ACI-SCC JV LLC had its capacity to do business canceled by the Delaware Secretary of State on May 7, 2015.

3.      Advanced Constructors International LLC ("ACI") was a Delaware limited liability company identified by file number 4656295. ACI had its capacity to do business canceled by the Delaware Secretary of State on September 23, 2015.

4.      ACI-SCC JV is a defunct company owned and operated by ACI-SCC JV LLC and it lost its authority to do business when its owner lost its legal capacity.

5.      Arwand is a company organized in Afghanistan and authorized to do business under the laws of Afghanistan. Arwand was a subcontractor to Plaintiffs on their contracts with the USACE. Arwand was unpaid for its work and obtained a judgment against Plaintiffs for $2,288,262.11 with daily interest at the rate of $352.32967 accruing after November 9, 2016, plus attorney's fees.

6.      On July 14, 2017, the Delaware Court of Chancery found that all Plaintiffs lost their legal capacity under Delaware law and appointed Arwand as Trustee for Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI.

## NATURE OF THE CASE

7.      Plaintiffs had contracts with Defendant including contract numbers:

- W5J9JE-10-D-0017 0001

- W5J9JE-10-D-0017 0002

- W5J9JE-10-D-0017 0004

- W5J9JE-10-D-0017 0006

- W5J9JE-10-D-0017 0008

- W5J9JE-10-D-0017 0012

- W5J9JE-10-D-0017 0013

- W5J9JE·10-D-0017 0014

- W5J9LE-11-C-0001

- W5J9LE-11-C-0020

8.      Arwand was a subcontractor to Plaintiffs on contract W5J9JE-10-D-0017 task order

0013.

9.      During Arwand's performance of its subcontract, it was unpaid, and it requested payment from both Plaintiffs and USACE.

10.     The USACE's Contracting Officer wrote to Plaintiffs and told them that subcontractors were unpaid and to pay the subcontractors.

11.     Plaintiffs did not pay Arwand and other subcontractors. Work stopped. The USACE terminated the contracts.

12.     Following the termination of the contracts, Plaintiffs filed claims with the USACE's Contracting Officers. Plaintiffs were unsatisfied with the contracting officers' final decisions and filed appeals of those final decisions with ASBCA. Those appeals were docketed as numbers 58222, 58282, 58283, 58367, 58370, 58581, 58604, 58739, 58740 and 58741.

13.     While the ASBCA appeals were pending, all Plaintiffs lost their legal capacity under Delaware law to maintain those appeals or receive a satisfaction of any accords entered into when Plaintiffs had legal capacity.

14.     The USACE purported to enter into accords with Plaintiffs, however after Plaintiffs lost their legal capacity, Plaintiffs were legally unable to maintain ASBCA appeals, enter into contracts or receive satisfaction of any accord with the USACE.

15.     Arwand proved to the Delaware Court of Chancery that Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, lost their authority to legal authority to operate under Delaware law in 2015, and had not been revived. On July 14, 2017 the Delaware Court of Chancery appointed Arwand as Trustee of the assets of Plaintiffs and judicially authorized Arwand to prosecute claims and receive payments on behalf of Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI. Arwand, as Trustee, brings this claim against the United States for its failure to satisfy the accord, the United

States' breach of the duty of good faith and fair dealing, as the sponsor of the pass-through claim of Arwand and for breach of Defendant's contractual regulatory duty to demand Plaintiffs to settle with subcontractors and for Defendant's exclusion of Arwand from settlement agreements.

## JURISDICTION

16.    This court has jurisdiction over Plaintiffs' claims pursuant to the Tucker Act, 28 U.S.C. § 1491. Pursuant to the Tucker Act, this court may hear "any claim against the United States founded . . . upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." The Tucker Act serves as a waiver of sovereign immunity and a jurisdictional grant.

## BACKGROUND

17.    The United States Congress found that prime contractors may default on their commitment to complete a project or not pay their subcontractors. To ensure the protection of both the United States and the subcontractors, Congress enacted the Miller Act that required a prime contractor to provide performance and payment bonds.

18.    The Miller Act allows the United States to waive the payment bond requirement for projects outside the United States. The United States knew that if it waived the Miller Act payment bond requirement, that it was likely that subcontractors would be unpaid. In 2013, after the USACE had waived the Miller Act requirements, the Special Inspector General for Afghanistan Reconstruction ("SIGAR") reported that numerous Afghan subcontractors were not paid and that it had opened 52 investigations related to more than $69 million in money claimed by subcontractors. As a result of the non-payments SIGAR reported that there were death threats, work stoppages and strikes relating to subcontractor nonpayment.

19.    Knowing that there was a serious risk of subcontractor non-payment, United States

continued to waive the Miller Act protections on Plaintiffs contracts and took no other action to ensure Plaintiffs' compliance or to prevent work disruptions through nonpayment of subcontractors.

20.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, did not provide any payment bonds for the protection of its subcontractors.

21.     Plaintiffs, ACI-SCC JV LLC and ACI, were limited liability companies organized under the laws of Delaware and granted capacity to enter into contracts and conduct business as long as Plaintiffs complied with their legal entity obligations

22.     ACI-SCC JV was a legal entity organized and operated in Delaware and the United States. ACI-SCC JV was owned by ACI-SCC JV LLC, and gained its authority to operate from ACI-SCC JV LLC's authority to operate under Delaware law.

23.     On January 23, 2011, ACI-SCC JV, a Delaware entity, obtained a one-year business license from Afghanistan Investment Support Agency ("AISA") under the name ACI-SCC for it to perform work. ACI-SCC's license expired on January 22, 2012, and it was no longer authorized to do business in Afghanistan.

24.     On September 29, 2011, another company named ACI-SCC JV LLC was organized in Florida under entity number L11000111746. This entity was formed after the USACE and ACI-SCC JV entered into each of its contracts. The Florida entity, ACI-SCC JV LLC, lost its capacity to operate under Florida law in September 2012 and was revived on March 19, 2013. The Florida entity then again lost its capacity to operate again on September 26, 2014, and has not been revived.

25.     Between 2008 and 2016, the United States of America ("United States") undertook construction projects in Afghanistan and entered into construction contracts with Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, through its agencies, including the USACE.

26.     Title 48 of the Code of Federal Regulations is titled the Federal Acquisition Regulations System ("FAR").

27.     The USACE allows a prime contractor to have business partners on a contract. These business partners are part of a teaming agreement and can include joint venturers or subcontractors.

28.     FAR § 9.603 provides "The Government will recognize the integrity and validity of contractor team arrangements; provided, the arrangements are identified and company relationships are fully disclosed in an offer or, for arrangements entered into after submission of an offer, before the arrangement becomes effective."

29.     FAR § 4.102 provides "(d) Joint venturers. A contract with joint venturers may involve any combination of individuals, partnerships, or corporations. The contract shall be signed by each participant in the joint venture in the manner prescribed in paragraphs (a) through (c) of this section for each type of participant. When a corporation is participating, the contracting officer shall verify that the corporation is authorized to participate in the joint venture."

30.     Together FARs §§ 4.102 and 9.603 require that Defendant record and identify each subcontractor and joint venture partner on a contract. Each of those identified parties is entitled to have the United States comply with its contractual duty of good faith and fair dealing.

31.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, hired numerous subcontractors for work on those subcontracts and those subcontractors are entitled to have the United States act in good faith and deal fairly with the prime contractor so that their rights under the prime contract is not harmed.

32.     In July 2011, Plaintiffs entered into a subcontract with Arwand concerning contract W5J9JE-10-D-0017 task order 0013.

33.     Arwand, like numerous other subcontractors, provided services on the contracts between the United States and ACI-SCC JV, ACI-SCC JV LLC and ACI.

34.     Arwand, like numerous other subcontractors, submitted timely invoices for payment pursuant to the terms of its subcontract.

35.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, did not pay Arwand's invoices in a timely manner as required by the Prompt Payment Act.

36.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, told Arwand and other subcontractors that they could not pay the invoices, because Plaintiffs had not been paid by the United States.

37.     After several months of non-payment, and the prime contractor's claim that it had not been paid by the United States, Arwand and other subcontractors called and emailed the Contracting Officer for contract W5J9JE-10-D-0017 task order 0013 to determine whether the United States had not paid the ACI-SCC JV.

38.     The United States told the subcontractors that it had paid its prime contractor, Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI.

39.     On June 21, 2012, USACE's Contracting Officer, Edward A. Boddie, sent serial letter C-0037 concerning contract W5J9JE-10-D-0017 task order 0013 and told ACI-SCC JV that its pay request #21 was rejected. One of the reasons for the rejection was because ACI-SCC JV did not "Provide evidence that the amounts listed as due to subcontractors on your previous Progress Payments has actually been disbursed." Later in that letter, USACE confirmed Plaintiffs' nonpayment of subcontractors when its contracting officer wrote "NOTE: Complaints of nonpayment by subcontractors have taken up a substantial amount USACE resources just in listening to the complaints."

40.     The USACE requested substantiation from Plaintiffs that subcontractors had been paid, and Plaintiffs did not provide that substantiation. When the USACE did not receive Plaintiffs' substantiation it was on notice that there was sufficient evidence of the truthfulness of subcontractors' claims of non-payment.

41.     On July 9, 2012, USACE's Contracting Officer Representative, Michael Fellenz, sent serial letter C-0038 that said "Pay request #20, in the amount of $92,700, received 25 June 2012, for contract number W5J9JE-10-D-0017 0013, is hereby withheld in its entirety till all subs non/late payment issues are resolved. Many of your subcontractors have complained to USACE about not being paid for work performed on this contract."

42.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, did not pay the subcontractors on contract W5J9JE-10-D-0017 task order 0013 and other contracts, and the subcontractors stopped work. Thereafter the United States terminated some of Plaintiffs' contracts for default or convenience.

43.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, filed claims as a result of the contract terminations. Both Plaintiffs and the United States had a duty to act fairly to all the unpaid subcontractors who had performed work, and were unpaid.

44.     Plaintiffs, ACI-SCC JV and/or ACI-SCC JV LLC, appealed the contracting officer's final decisions to the ASBCA and those cases were docketed under appeal numbers 58222, 58282, 58283, 58367, 58370 and 58581 through its counsel, Dirk Haire, Esq. of Fox Rothschild LLP.

45.     Plaintiff, ACI, appealed the contracting officer's final decisions to the Armed Services Board of Contract Appeals ("ASBCA") and those cases were docketed under appeal numbers 58604, 58739, 58740 and 58741 through its counsel Richard L. Moorhouse, Esq. of

Greenberg Traurig LLP.

46.     Plaintiff, ACI-SCC JV LLC, had its certificate of formation canceled and forfeited on May 7, 2015 by the Delaware Secretary of State pursuant to 6 Del. Code § 18-203 and 18-104 (d).

47.     Plaintiff, ACI-SCC JV, was an unincorporated company that lost its ability to operate as a result of the cancellation and forfeiture of ACI-SCC JV LLC's authority to operate on May 7, 2015 by the Delaware Secretary of State pursuant to 6 Del. Code §§ 18-203 and 18-104 (d).

48.     Plaintiff, ACI had its certificate of formation canceled and forfeited on September 23, 2015 by the Delaware Secretary of State pursuant to 6 Del. Code § 18-203 and 18-104 (d).

49.     The Florida entity with the identical name, ACI-SCC JV LLC, was not a party to the contracts or appeals.

50.     ACI-SCC JV and/or ACI-SCC JV LLC maintained and settled appeal numbers 58222, 58282, 58283, 58367, 58370 and 58581 after May 6, 2015, even though its legal authority to operate had been canceled by the State of Delaware on May 7, 2015.

51.     On August 26, 2015, USACE's counsel, James A. Stephens, wrote to counsel for the defunct Plaintiff, ACI-SCC JV and/or ACI-SCC JV LLC and identified that contractors had not been paid on W5J9JE-10-D-0017 0001. For that contract the USACE agreed to pay some of the subcontractors who had not been paid. USACE's counsel wrote "It appears that [redacted] performed work on this task order. The company has made repeated complaints to USACE that the JV did not reimburse it for work it performed. The JV did not include the company in its summary USACE is willing to place $34,550.00 into escrow for work.

52.     USACE recognized its duty to account for all the subcontractors and teaming

partners to ensure that there was a settlement in place with each subcontractor who provided services to Plaintiffs.

53.     On September 9, 2015 a conference call was held concerning appeal numbers 58604, 58739, 58740 and 58741 and the September 14, 2015 memorandum of the call noted that no funds had been disbursed, and a disbursement was expected in "3 or 4 weeks."

54.     ACI maintained and settled appeal numbers 58604, 58739, 58740 and 58741 after September 22, 2015 and thereafter, even though its legal authority to operate had been canceled by the State of Delaware on September 23, 2015.

55.     After September 22, 2015 ACI had no legal capacity to receive a satisfaction of any accord.

56.     On October 8, 2015, Administrative Judge Elizabeth A. Tunks signed an order of dismissal related to ACI, even though ACI had lost its legal authority to operate or do business under the laws of the State of Delaware.

57.     On February 12, 2016 the United States purported to have entered into a settlement agreement with ACI-SCC JV LLC, a legal entity whose authority to operate was terminated on May 7, 2015. The first line of the agreement said "This Settlement Agreement (the "Agreement") is made on this 12th day of February 2016 between the US Army Corps of Engineers, Middle East District (the Government), represented by Mr. Edward A. Boddie, an unlimited-warrant-holding federal Contracting Officer, and Mr. Ibtisam M. Khafaji, the President of ACI-SSC JV, LLC (JV or Appellant), collectively 'the Parties.'" That settlement agreement was not signed by a party to the contracts.

58.     On May 23, 2016, Arwand sued ACI-SCC JV, ACI-SCC JV LLC and ACI in the US District Court for the District of Delaware, case number 1-16-cv-00317-SLR for damages due

under the contract.

59.     On June 20, 2016, counsel for Arwand sent a letter to Richard L. Moorhouse, Esq. of Greenberg Traurig LLP, ACI's counsel of record before the ASBCA on appeal numbers 58604, 58739, 58740 and 58741, and wrote "The Armed Services Board of Contract Appeals shows that you are the lead attorney for Advanced Constructors International LLC for Docket numbers 58604, 58739, 58740 and 58741. My client, Arwand Road and Construction Company, has sued your client Advanced Constructors International LLC and its joint venture companies ACI-SCC JV and ACI-SCC JV LLC. Advanced Constructors International LLC and ACI-SCC JV LLC are not in good standing with the State of Delaware and neither has an agent for service of process with the Delaware Secretary of State. My client has served the Secretary of State as required by Delaware law. I have attached the Summons and Complaint for the three defendants, and request that you forward the documents to your client."

60.     On June 23, 2016, counsel for Arwand sent a letter to Dirk Haire, Esq, of Fox Rothschild LLP, ACI-SCC JV's and/or ACI-SCC JV LLC's counsel of record before the ASBCA on appeal numbers 58222, 58282, 58283, 58367, 58370 and 58581, that a lawsuit had been filed against ACI-SCC JV, ACI-SCC JV LLC and ACI. The letter stated that "The Delaware entities, ACI-SCC JV LLC and Advanced Constructors International LLC, do not have resident agents to serve ACI-SCC JV. My client has served the Secretary of State as required by Delaware law. I have attached the Summons and Complaint for the ACI-SCC JV and ACI-SCC JV LLC and request that you forward the documents to your client and notify it of the Delaware case."

61.     On June 24, 2016, ACI's counsel, Richard Moorhouse, Esq., replied by letter "Per our exchange of communications via voice mail, this confirms that Greenberg Traurig, LLP does not represent ACI-SCC JV, ACI-SCC JV LLC, . . . Greenberg Traurig has only represented

Advanced Constructors International, LLC ("ACI") with respect to matters before the Armed Services Board of Contract Appeals ("ASBCA") as you referenced in your cover letter of June 20, 2016."

62.     On July 21, 2016, ACI-SCC JV's and ACI-SCC JV LLC's counsel, Dirk Haire, Esq. responded "I am in receipt of your correspondence dated June 23, 2016 in connection with Arwand Road and Construction Company v. ACI-SCC JV et. al; Case No. l:16-cv-00317-SLR. Please be advised that Fox Rothschild LLP does not represent ACI-SCC JV in connection with the case you reference and we are unable to accept service in connection therewith."

63.     As of July 2016, the counsel of record for Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, had actual knowledge that Plaintiffs who had filed appeals in the ASBCA had clients that were not in good standing with the State of Delaware, and were not authorized to do business.

64.     On November 9, 2016, the U.S. District Court for the District of Delaware entered judgment in favor of Arwand against ACI, ACI-SCC JV LLC, and ACI-SCC JV, jointly and severally in the amount of $2,288,262.11, plus interest at the rate of 5.62%.

65.     The Delaware district court also made a judicial assignment of contractual rights to Arwand. That court awarded to Arwand "all [ACI-SCC JV's, ACI-SCC JV LLC's and ACI's] rights related to contract W5J9JE-10-D-0017 task order 0013 with the United States Government are hereby assigned and transferred to [Arwand], including [ACI-SCC JV's, ACI-SCC JV LLC's and ACI's] rights to recover [ACI-SCC JV's, ACI-SCC JV LLC's and ACI's] amounts due, challenge any termination for default, file a Certification of Claim for the benefit of [ACI-SCC JV's, ACI-SCC JV LLC's and ACI's] or [Arwand], the right to assert subcontractor claims for the benefit of [Arwand] as a subcontractor, all 'flow-through' rights, the right to file a Claim arising

from the contract in the name of [ACI-SCC JV, ACI-SCC JV LLC and ACI] or [Arwand], the right to appeal any award or denial of the claim and any ancillary or necessary rights to enforce the assigned rights are hereby transferred from Defendants, ACI-SCC JV, ACI-SCC JV LLC and Advanced Constructors."

66.     Delaware law provides that if a limited liability company has had its legal authority canceled or forfeited, that a judgment creditor can be appointed as trustee over the assets of the canceled or forfeited limited liability company.

67.     Arwand petitioned the Delaware Court of Chancery, as a judgment creditor to be appointed as trustee over the assets of Judgment Debtors, Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI.

68.     On July 14, 2017, the Delaware Court of Chancery entered an order that appointed Arwand as Trustee over the assets of Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI.

## COUNT I

## TRUSTEE'S DEMAND FOR SATISFACTION FOLLOWING ACCORD

Plaintiffs, through their Trustee, Arwand, hereby incorporates all paragraphs in this Count.

69.     Defendant entered into accords with Plaintiffs related to the contracts.

70.     At the time Defendant entered into the settlement accords and intended to make a payment, Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, had their legal authority to operate canceled by the State of Delaware. The Florida entity with the name ACI-SCC JV LLC was not a party to the contracts, because it was not in existence at the time the parties' contracts were executed, and USACE never consented to an assignment.

71.     As a result of that cancelation by the State of Delaware, Plaintiffs lacked legal capacity to receive a satisfaction and there was no other legal entity to receive the money.

72.     Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, did not revive their corporate status prior to the appointment of Arwand as Trustee over Plaintiffs.

73.     To establish the affirmative defense of accord and satisfaction, a defendant must prove four elements: proper subject matter; competent parties; meeting of the minds of the parties; and consideration.

74.     Between Plaintiffs' cancelation of their legal capacity and July 14, 2017, there was no person with capacity to receive Defendant's satisfaction payment. On November 7, 2017, the sole party with capacity to receive the satisfaction of the accord is Plaintiffs' Trustee, Arwand. Defendant is in breach of its duty to satisfy the accord recorded in the settlement agreement.

75.     No consideration has been paid by Defendant and Plaintiffs' Trustee demands payment according to the terms of the settlement agreement.

76.     Defendant is not entitled to an offset to Trustee for any funds mistakenly paid to a party other than Plaintiffs' Trustee.

77.     WHEREFORE, Plaintiffs' Trustee demands that the United States fulfill the terms of its settlement agreements, that this Court order Defendant to satisfy its accord by paying Plaintiffs' Trustee the agreed amounts, and award Trustee fees, Trustee's attorney's fees, Prompt Payment Act interest, costs of this suit, attorney's fees and other contractual, equitable and legal remedies.

## COUNT II

## BREACH OF DEFENDANT'S IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Plaintiffs, through their Trustee, Arwand, hereby incorporates all paragraphs in this Count.

78.     In every contract or agreement there is an implied promise of good faith and fair dealing, and this extends to the whole contract including the Plaintiffs' teaming partners.

79.     The USACE waived the Miller Act bond requirements, knew that there were no mechanics' liens rights for subcontractors and had knowledge or a reasonable belief that there were unpaid subcontractors.

80.     After a contract is terminated for convenience, the FAR required that the United States' contractor shall enter into settlement agreements with its subcontractors and that the terminating contracting officer was to review the settlement proposal of the contractor that included the claims of the contractor and the settlements with all subcontractors.

81.     The United States knew that all subcontractors have no private right of action against the United States because there is no privity between the subcontractor and the United States.

82.     The United States knew that many of the subcontractors were local Afghan companies that had little experience with the United States legal system, inadequate funds to hire an attorney in the United States, lacked an appropriate understanding of the burden of proof in courts of the United States or the ability to communicate with and retain an attorney in the United States.

83.     The United States had a strong self-interest in entering into settlement agreements with Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, in a manner that would foreclose the claims of subcontractors and limit the future financial exposure of the United States to claims of subcontractors.

84.     As stated in paragraphs 39, 40 and 41 above, Defendant knew that Plaintiffs teaming partners had not been paid on multiple contracts. The complaints were so numerous that the Contracting Officer complained that it was taking up a significant amount of his time. When Plaintiffs failed to produce evidence of payment to their teaming partners, Defendant had

knowledge that the subcontractor statements required further investigation.

85.     The United States duty of good faith and fair dealing required it to act fairly to Plaintiffs' teaming partners to allow them to receive the benefits of the contract between Defendant and Plaintiffs. Defendant's duty of good faith and fair dealing required it to act in a way that would have preserved the reasonable expectations of Plaintiffs' teaming partners regarding the fruits of the contracts due to them by Defendant.

86.     When Defendant knew that subcontractors and teaming partners had not been paid, Defendant's duty of good faith and fair dealing required that Defendant ensure its settlement agreement was fair to the contractors' teaming partners for amounts that were unpaid.

87.     Defendant's duty of good faith and fair dealing required that it ensure that any settlement agreement with Plaintiffs was no more or less favorable than to Plaintiffs and all of their teaming partners.

88.     Defendant had actual knowledge that Plaintiffs failed to pay their subcontractors during the performance and after termination of the contracts. Yet despite communications of non-payment, Defendant failed to act to initiate an investigation of non-payment pursuant to FAR § 32.112.-1. Defendant's omissions violated its covenant of good faith and fair dealing, as well as FAR § 1.602-2, that requires the contracting officer to ensure impartial, fair, and equitable treatment.

89.     In this case, Defendant sought to relieve itself of its contractual financial obligation to the known unpaid subcontractors.

90.     Defendant acted in its own self-interest to the detriment of its contractors' teaming partners when it failed to demand that Plaintiffs settle their subcontractors' claims prior to entering into a settlement agreement. Defendant further acted in its self-interest when it sought to contract away its duty to pay the claims of unpaid subcontractors or for those subcontractors to have their

claims asserted or adjudicated.

91.     Defendant breached its duty of good faith and fair dealing when it put its financial self-interest above its contractors' teaming partners and made subcontractors bear the financial burden of the Government's own improvidence.

92.     In this case Defendant is liable for damages as a result of the government's action that was specifically designed to reappropriate the Plaintiffs' teaming partners' expected benefits, and thereby abrogated the government's obligations under the contract.

93.     Defendant's duty of good faith and fair dealing included the duty not to hinder the Plaintiffs' rights to recover under the contracts. Defendant's implied duty included its cooperation with Plaintiffs to protect the subcontractors. Defendant's settlement of these contacts without addressing subcontractors' claims, was a targeted action to exclude the claims of subcontractors.

94.     Since the United States knew that Plaintiffs, ACI-SCC JV, ACI-SCC JV LLC and ACI, had not paid their subcontractors as required during the period of the contract performance, the United States had a duty to ensure that Defendant's prime contractor settled and paid its subcontractors.

95.     The United States paid more than $600,000 in attorney's fees related to the representation of a subset of unpaid subcontractors' claims. The United States then failed to oversee those payments. ACI's counsel told subcontractors, the amount that the government had approved for a settlement. In one case, the United States agreed to pay $708,000.00 to ACI's subcontractor and then ACI offered that subcontractor $106,000.00, less than 15 % of the claim approved by the United States.

96.     Under the Severin Doctrine, Plaintiffs were to show that they settled with their subcontractors before paying Plaintiffs. If the United States had required Plaintiffs to prove that

they had settled, and Plaintiffs' obligations to their subcontractors was fixed, Plaintiffs would not have been able to withhold 85% of their subcontractors' settlement funds.

97.    The United States deliberately entered into settlement agreements that foreclosed the opportunity of Plaintiffs' unpaid subcontractors to be paid.

98.    Pursuant to FARs, the United States had a duty to compel the contractor to settle with its unpaid subcontractors, assign the right to settle to the United States or exclude those subcontractors from the terms of the settlement.

99.    Arwand's and other subcontractors' damages were foreseeable when Defendant breached its implied duty of good faith and fair dealing.

100.   Arwand's damages, having been determined and entered by the U.S. District Court for the District of Delaware, are certain.

101.   Defendant's breach of its duty of good faith and fair dealing was the cause of Arwand's damages.

WHEREFORE, Plaintiffs' Trustee asserts claims on behalf of all unpaid subcontractors for appropriate compensation, including those of Arwand, restitution damages, damages based on the reasonable value of subcontractors' services, or other compensation that will compensate Plaintiffs' subcontractors. Plaintiffs' Trustee also demands Trustee fees, Trustee's attorney's fees, interest under the Prompt Payment Act, costs of this suit, attorney's fees and other contractual, equitable and legal remedies.

# COUNT III

## PASS-THROUGH CLAIM OF SUBCONTRACTOR, ARWAND

Plaintiffs, through their Trustee, Arwand, hereby incorporates all paragraphs in this Count.

102.   Arwand was a subcontractor of Plaintiffs on contract W5J9JE-10-D-0017 task

order 0013.

103.   Arwand's claim was brought by Plaintiffs' Trustee, in the name of ACI-SCC JV LLC and/or ACI-SCC JV.

104.   Plaintiffs' Trustee hereby sponsors the claim of Arwand against the United States.

105.   During the period of contract performance, Arwand made repeated requests for payment to Plaintiffs and was never paid.

106.   Arwand sued ACI-SCC JV, ACI-SCC JV LLC and ACI and obtained a judgment and a judicial assignment of rights from the United States District Court for the District of Delaware and the Delaware Court of Chancery.

107.   On November 10, 2016, ACI-SCC JV mailed its Certification of Claim for the benefit of its subcontractor, Arwand, to Secretary of Defense Ashton Carter.

108.   More than 60 days have passed, and the contracting officer has not entered a final decision on the claim sent by ACI-SCC JV on behalf of Arwand.

109.   The United States in its February 2016 agreement with ACI-SCC JV and ACI-SCC JV LLC agreed that contact W5J9JE-10-D-0017 task order 0013 was terminated for convenience.

110.   Plaintiffs never entered into a settlement agreement with Arwand as required by FAR § 49.108-3.

111.   Plaintiffs never submitted a settlement proposal to the government on behalf of Arwand.

112.   Pursuant to FAR § 49.108-6, Arwand's claim has been excluded from the settlement between the contractor and the United States.

113.   FAR § 49.108-5 provides for the recognition of judgments. The United States violated its regulations that required the United States to settle with its contractor after that

contractor settled with its subcontractors. As a result of the United States choosing to settle with its contractor, even though it knew that the contractor had not settled with its subcontractors, the United States waived its rights to demand that the contractor make reasonable efforts to settle with the subcontractor as provided in FAR 49.108-5 § (a) (3).

114.    The United States should not be permitted to financially benefit from ignoring the regulations that it promulgated for the protection of the United States, contractors and a contractors' teaming partners.

WHEREFORE, Plaintiffs' Trustee demands that this court enter damages arising from the United States' breach of contract or for restitution in the amount of $2,288,262.11, plus interest after November 9, 2016 at the rate of 5.62% pursuant to FAR § 49.108-5, Trustee fees, Trustee's attorney's fees, interest under the Prompt Payment Act, costs of this suit, attorney's fees and other contractual, equitable and legal remedies.

## COUNT IV

## BREACH OF CONTRACTUAL REGULATORY DUTY

Plaintiffs, through their Trustee, Arwand, hereby incorporates all paragraphs in this Count.

115.    The United States promulgated the FAR to govern the its conduct and that of its contractor to protect the rights of subcontractors including FAR §§ 49.108-1, 49.108-3, 49.104, 49.108-5, 49.108-6, and 49.108-7.

116.    The United States had a contractual and regulatory duty to comply with its regulations.

117.    The United States knew that subcontractors had no Miller Act remedies, therefore if the United States failed to follow its regulations, subcontractors would have no direct contractual remedy to recover their funds.

118.    The FARs set forth the standard of conduct for the United States during its administration of its contracts.

119.    The United States violated its regulations when it failed to compel its contractors to settle with their subcontractors.

120.    The United States violated its regulations when it entered into an accord that foreclosed the rights of subcontractors.

121.    The United States breached its regulations and this breach was a substantial factor in bringing about the harm to Arwand.

122.    The parties' contracts governed the benefits due to the prime contractor and its teaming partners.

123.    When the United States intentionally violated its FARs and entered into settlements that prejudiced Arwand and other subcontractors, the United States breached the express terms of its contract and the incorporated regulations that caused damage to Arwand.

WHEREFORE, Plaintiffs' Trustee demands that this court enter damages arising from the United States' breach of its contract and regulatory obligation or for restitution in the amount of $2,288,262.11, interest after November 9, 2016 at the rate of 5.62% pursuant to FAR 49.108-5, Trustee fees, Trustee's attorney's fees, interest under the Prompt Payment Act, costs of this suit, attorney's fees and other contractual, equitable and legal remedies.

## COUNT V

## ECONOMIC DURESS AND BUSINESS COMPULSION

Plaintiffs, through their Trustee, Arwand, hereby incorporates all paragraphs in this Count.

124.    Defendant wrongfully used its economic power to defeat the will of Plaintiffs to enter into accords, settlements and releases that benefitted Plaintiffs to the harm of Plaintiffs'

teaming partners.

125.    Defendant had knowledge that teaming partners had not been paid, had a duty to ensure that there were settlements with Plaintiffs' teaming partners and sought no-cost settlement agreements, releases or dismissals that protected the Government's interest that had no benefit or necessity to the Plaintiffs' teaming partners.

126.    Defendant sought a settlement offer that was disproportionate because it sought to resolve only the claims of Plaintiffs and a few select teaming partners, and to exclude the claims of all other teaming partners, including Arwand.

127.    Defendant's conduct was wrongful because Defendant's contracting officer had actual or constructive knowledge that subcontractors had not been paid on multiple contracts, including contract W5J9JE-10-D-0017 task order 0013. Defendant coerced Plaintiff into entering into no-cost settlements that excluded the rights of subcontractors for the purpose of Defendant eliminating its limiting its liability on those contracts so that Plaintiffs could resolve the other outstanding claims.

128.    Defendant's conduct was wrongful as to the contractors' teaming partners because Defendant knew that subcontractors were unpaid, and it entered into an agreement that paid money to Plaintiffs without designating any of those funds to be paid to known unpaid teaming partners.

129.    Defendant applied financial stress to Plaintiffs to protect Defendant's financial self-interest at the expense of Plaintiffs' teaming partners and to defeat the will of the Plaintiffs to properly protect their teaming partners' interests. When Defendant entered into the settlement agreements, the terms were unfair to Plaintiffs' known unpaid teaming partners. As part of any settlement with Plaintiffs, Defendant had a duty to ensure that all claims associated with the contracts were appropriately addressed. Defendant used its economic power to absolve itself of

liability to known unpaid subcontractors by crafting a settlement scheme with Plaintiffs where Defendant paid Plaintiffs in return for eliminating, releasing and discharging subcontractors' rights to have their claims adjudicated against Defendant. Those settlement agreements increased the difficulty and costs for Plaintiffs' teaming partners to have their claims heard, and money paid. The settlement agreements were prejudicial to the unpaid teaming partners because it paid some contract funds to Plaintiffs and those payments reduced the total available contract funds for Plaintiffs' teaming partners.

130.    WHEREFORE, Plaintiffs' Trustee demands that this court enter damages arising from the United States' economic duress in the amount of $2,288,262.11, plus interest after November 9, 2016 at the rate of 5.62% pursuant to FAR 49.108-5, Trustee fees, Trustee's attorney's fees, interest under the Prompt Payment Act, costs of this suit, attorney's fees and other contractual, equitable and legal remedies.

## PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Arwand hereby respectfully requests that the Court enter an order that Defendant satisfy its accord, enter judgment for Plaintiffs on its pass-through claim of Arwand, find that the settlement agreements are void, find that Defendant breached its contractual and regulatory duties and this breach caused harm to Plaintiffs, an order directing Defendant to comply with its regulations related to settlements with subcontractors and

award Plaintiffs the amount of the satisfaction, the pass-through claim, restitution, attorney's fees,

Prompt Payment Act Interest, costs of this suit, and other legal and equitable remedies.


Respectfully Submitted,
November 7, 2017,

s/Walt Pennington_____
Walt Pennington
Pennington Law Firm
3302 30th Street
San Diego, CA 92104-4535
619 940 6157 telephone
wpennington@pennfirm.com

*Attorney for ACI-SCC JV, ACI-SCC JV LLC and Advanced Constructors International LLC,
through their Trustee, Arwand Road and Construction Company, Plaintiffs*