# Exhibit 10

## SETTLEMENT AGREEMENT

### ASBCA Nos. 58222, 58282, 58283, 58367, 58370, and 58581
### and
### Termination for Convenience Settlement Proposals for Contract Nos. W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004

This Settlement Agreement (the "Agreement") is made on this 8th day of January 2016 ~~February 6~~ between the US Army Corps of Engineers, Middle East District (the Government), represented by Mr. Edward A. Boddie, an unlimited-warrant-holding federal Contracting Officer, and Mr. Ibtisam M. Khafaji, the President of ACI-SSC JV, LLC (JV or Appellant), collectively "the Parties".

### RECITALS:

#### *Shorabak 215th CLB Contract- ASBCA Nos. 58222*

**WHEREAS,** on 30 April 2010, the Parties entered into Contract No. W5J9JE-10-D-0017-0014 (the Shorabak 215th CLB Contract), for the design and construction of an Afghan National Army's (ANA) 215th Combat Logistics Battalion (CLB) facility at Shorabak in Helmand, Afghanistan in the amount of $27,438,800;

**WHEREAS,** on 26 April 2012, the Government issued a final decision terminating the JV for default for its failure to meet construction progress schedules, to diligently prosecute the work, and for its incorporation of materials manufactured in a prohibited source country (Iran);

**WHEREAS,** by written notice dated 12 July 2012, the JV filed a Notice of Appeal with the Armed Services Board of Contract Appeals (hereinafter ASBCA) appealing the contracting officer's final decision, and the ASBCA assigned the appeal with docket number ASBCA No. 58222;

#### *Shorabak 215th HQ Ph. I Contract- ASBCA No. 58582*

**WHEREAS,** on 30 July 2010, the Parties entered into Contract No. W5J9JE-10-D-0017-0008 (the Shorabak 215th HQ Ph. I Contract) for the design and construction of Phase No. 1 of the 215th ANA Headquarters facility at Shorabak in Helmand, Afghanistan in the amount of $12,793,879;

**WHEREAS,** on 23 May 2012, the Government issued a final decision terminating the JV for default for its failure to meet construction progress schedules, failure to address performance deficiencies, failure to prosecute the work with enough diligence to ensure its completion within the time specified in the contract, and for its incorporation of materials manufactured in a prohibited source country (Iran);

ACTIVE 31394960v1 01/08/2016
Government Initials:_____

**WHEREAS,** by written notice dated 15 August 2012, the JV filed a Notice of Appeal with the ASBCA appealing the contracting officer's final decision, and the ASBCA assigned the appeal with docket number ASBCA No. 58282;

*Sho abak 215th HQ Ph. II Contract- ASBCA No. 58583*

**WHEREAS,** on 15 December 2010, the Parties entered into Contract No. W5J9JE-10-D-0017-0012 (the Shorabak 215th HQ Ph. II Contract) for the design and construction of Phase No. 2 of the 215th ANA Headquarters facility at Shorabak in Helmand, Afghanistan in the amount of $6,989,150.00;

**WHEREAS,** on 23 May 2012, the Government issued a final decision terminating the JV for default for its failure to meet construction progress schedules, failure to address performance deficiencies, and failure to prosecute the work with enough diligence to ensure its completion within the time specified in the contract;

**WHEREAS,** by written notice dated 15 August 2012, the JV filed a Notice of Appeal with the ASBCA appealing the contracting officer's final decision, and the ASBCA assigned the appeal with docket number ASBCA No. 58283;

*Camp Zafar CSB Contract- ASBCA No. 58367*

**WHEREAS,** on 4 December 2010, the Parties entered into Contract No. W5J9LE-11-C-0001 (the Camp Zafar CSB Contract) for the design and construction of an ANA Combat Support Battalion (CSB) facility at Camp Zafar in Herat, Afghanistan in the amount of $29,231,892.56;

**WHEREAS,** on 9 October 2012, the Government issued a final decision terminating the JV for default for its failure to meet construction progress and recovery schedules, and failure to prosecute the work with enough diligence to ensure its completion within the time specified in the contract;

**WHEREAS,** by written notice dated 26 October 2012, the JV filed a Notice of Appeal with the ASBCA appealing the contracting officer's final decision, and the ASBCA assigned the appeal with docket number ASBCA No. 58367;

*ANA Utilities Upgrade- Herat- ASBCA No. 58370*

**WHEREAS,** on 6 March 2011, the Parties entered into Contract No. W5J9JE-10-D-0017-0013 (the ANA Utilities Upgrade- Herat Contract) for the design and construction of a wastewater treatment lagoon system, sanitary sewer system, buildings, parking, utilities and other infrastructure at Camp Zafar in Herat, Afghanistan in the amount of $7,782,075;

EXHIBIT B, PG. 3

**WHEREAS,** on 9 October 2012, the Government issued a final decision terminating the JV for default for its failure to meet construction progress and recovery schedules, and failure to prosecute the work with enough diligence to ensure its completion within the time specified in the contract;

**WHEREAS,** by written notice dated 26 October 2012, the JV filed a Notice of Appeal with the ASBCA appealing the contracting officer's final decision, and the ASBCA assigned the appeal with docket number ASBCA No. 58367;

*ANP UP District HQ Naw Zad- ASBCA No. 58581*

**WHEREAS,** on 6 March 2011, the Parties entered into Contract No. W5J9JE-10-D-0017-0006 (the Afghan National Police (ANP) Uniformed Police (UP) HQ Naw Zad Contract) for the design and construction of a UP District HQ at Naw Zad in Helmand, Afghanistan in the amount of $2,290,288;

**WHEREAS,** on 13 February 2013, the Government issued a final decision terminating the JV for default for its failure to perform the contract within the period of performance, failure to address performance deficiencies, and failure to provide sufficient proof that the JV was solvent;

**WHEREAS,** by written notice dated 7 March 2013, the JV filed a Notice of Appeal with the ASBCA appealing the contracting officer's final decision, and the ASBCA assigned the appeal with docket number ASBCA No. 58581;

*Subcontractors Costs on W5J9JE-10-D-0017-0001 Termination for Convenience*

**WHEREAS,** on 25 June 2010, the Parties entered into Contract No. W5J9JE-10-D-0017-0001 (the MILCON Cargo Handling Area and Solid Waste Management - Forward Operating Base (FOB) Dwyer Project) for the design and construction of cargo handling and solid waste management facilities on FOB Dwyer in Afghanistan in the amount of $9,978,000;

**WHEREAS,** on 23 March 2013, the Government terminated the MILCON Cargo Handling Area and Solid Waste Management - FOB Dwyer Project for its convenience;

**WHEREAS,** on March 18, 2014 the JV submitted its termination for convenience settlement proposal to the Government in the amount of $2,346,871.77;

**WHEREAS,** on 9 January 2015, the JV submitted is verifiable, unpaid subcontractor costs for the project in the amount of $520,771.59;

**WHEREAS,** in addition to the submitted costs, the Government has reason to believe that Pampas Logistics & Supply performed work on the project in the amount of $34,550;

ACTIVE 31393960v1 01/08/2016
Government Initials:_____

*Subcontractors Costs on W5J9JE-10-D-0017-0002 Termination for Convenience*

**WHEREAS**, on 30 July 2010, the Parties entered into Contract No. W5J9JE-10-D-0017-0002 (the Military Construction (MILCON) Waste Management Areas, Wolverine Project) for the design and construction of waste management areas on Camp Wolverine in Shinkai, Zabul Province, Afghanistan in the amount of $4,519,860;

**WHEREAS**, on 27 February 2012, the Government terminated the MILCON Waste Management Areas, Wolverine Project for its convenience;

**WHEREAS**, on 4 October 2012, the JV submitted its termination for convenience settlement proposal to the Government in the amount of $823,948.59;

**WHEREAS**, on 9 January 2015, the JV submitted is verifiable, unpaid subcontractor costs for the project in the amount of $504,382;

*Subcontractors Costs on  W5J9JE-10-D-0017-0004 Termination for Convenience*

**WHEREAS**, on 6 July 2010, the Parties entered into Contract No. W5J9JE-10-D-0017-0004 (the Tarin Kowt Waste Management Complex Project) for the design and construction of waste management facilities at Tarin Kowt Unzgan Province, Afghanistan in the amount of $ 4,591,405.51;

**WHEREAS**, on 16 January 2012, the Government terminated the Tarin Kowt Waste Management Complex Project for its convenience;

**WHEREAS**, on 14 January 2013, the JV submitted its termination for convenience settlement proposal to the Government in the amount of $1,200,989.06;

**WHEREAS**, on 9 January 2015, the JV submitted is verifiable, unpaid subcontractor costs for the project in the amount of $737,788.82;

**WHEREAS**, the Parties have negotiated and given full consideration to all matters relating to a compromise and settlement of all matters under consideration in ASBCA Nos. 58222, 58282, 58283, 58367, 58370, and 58581 (collectively the "6 ASBCA Appeals") and the termination for convenience settlements relating to  Contract Nos. W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004 (collectively the "3 T4C settlement contracts") as well as all matters or claims and potential matters or claims (known or unknown) that the JV may have relating to any contract it has or has had with the Government as well as all matters or claims and potential matters or claims (known or unknown) that the Government may have relating to any contract it has or has had with the JV; and

**WHEREAS**, in the interest of resolving all matters relating to the 6 ASBCA Appeals and the 3 T4C settlement contracts, as well as all matters and/or claims and potential matters and/or claims (known or unknown) that the JV might have under or relating to any

ACTIVE 32394960v1 01/08/2016

Government Initials:_____

contract it has or has had with the Government as well as all matters or claims and
potential matters or claims (known or unknown) that the Government may have relating
to any contract it has or has had with the JV, and under the sound policy of law favoring the
settlement of disputes, the Parties understand and agree that the Parties' agreements
herein constitute and represent full consideration for and satisfaction of any and all
matters and/or claims brought under the 6 ASBCA Appeals and the 3 T4C settlement
contracts, as well as all matters or claims or potential matters or claims (known or
unknown) that the JV might have any contract it has or has had with the Government as
well as all matters or claims and potential matters or claims (known or unknown) that the
Government may have relating to any contract it has or has had with the JV.

NOW, THEREFORE, the Parties, having determined that compromise is in each of their
best interests, agree to a full settlement of the matters in dispute in accordance with the
terms herein.

1.   The Parties hereby incorporate the above-stated recitals into this Agreement.

2.   <u>Obligations of the Government</u>. In exchange for the mutual promises and covenants
contained herein, the Government is responsible for the following:

     a.   The Government will release to the JV the following funds relating to the 3
T4C settlement contracts:

| | | |
|---|---|---|
| i.    | Contract No. W5J9JE-10-D-0017-0001- | $555,321.59 |
| ii.   | Contract No. W5J9JE-10-D-0017-0002- | $483,982.00 |
| iii.  | Contract No. W5J9JE-10-D-0017-0004- | $737,788.82 |

                                                     **TOTAL:   $1,777,092.41**

     b.   The Government will deposit these funds into the escrow account as a
means of payment to those of the JV's subcontractors on the 3 T4C settlement contracts.
The Government will transmit the $1,777,092.41 settlement amount to the account of ▇
▇▇▇▇▇▇▇▇, Account No. ▇▇▇▇▇▇▇▇, TIN No. ▇▇▇▇▇▇ will receive the
payment of the settlement amount as a fiduciary agent responsible for its distribution in
accordance with this settlement, to be held in escrow and to be released to subcontractors
in exchange for their release of claims in accordance with the amounts and to the recipients
recited in the attachments to Appellant's 9 January 2015 letter on this subject (Attachment
A to this agreement), as modified in the Government's 26 August 2015 letter regarding the
same (Attachment B to this agreement).

     c.   The Appellant claims it has already made a partial distribution to
subcontractors of amounts it has sought from the Government for the 3 T4C settlement
contracts. Consequently, after the funds that the Government deposits into escrow are

ACTIVE 31293060v1 01/08/2016
Government Initials:_____

distributed and the Appellant obtains claims releases from the subcontractors paid under this arrangement, it is anticipated that a portion of the settlement funds will remain in escrow. Where the Appellant can demonstrate to the Government that it has already reimbursed its subcontractors for amounts sought in its 3 T4C settlement contracts, as further outlined herein in ¶3.*., the Government will issue a written approval to the escrow agent to distribute the remaining funds directly to the Appellant. Such approval by the Government, and the escrow agent's release of funds, will be made on a subcontractor-by-subcontractor basis once the Government has provided its consent for release of funds in connection with each subcontractor. To the extent Appellant demonstrates that it has made a request to a subcontractor for the required release and said subcontractor has failed to respond to Appellant within 60 days, then in such event the Government consents to allow the escrow agent to release escrow funds to the Appellant in an amount equal to the amount for which Appellant has provided acceptable proof of payment to subcontractor.

      d.    If payment is not paid by the Government in the timeframe and amount specified, Prompt Payment Act ("PPA") interest will begin to accrue on the outstanding balance. Such delay does not constitute a breach of this agreement.

      e.    The Parties recognize that the JV owes its counsel fees and will permit the JV to deduct those fees, up to an amount of $675,000, from the approved payments to be made to the subcontractors, upon agreement of subcontractors and provision of the full release called for in this agreement for the subcontractors' release of payment.

      f.    Notwithstanding any other provision of this agreement, the amounts distributed by the Government to satisfy its obligations under this settlement will not exceed the total of the items listed in 2.a, above, which shall represent all sums due Appellant from the Government in settlement of the 6 ASBCA Appeals, the 3 T4C settlement contracts, and all other matters and shall constitute the Contractor's final payment under Contract Nos. W5J9JE-10-D-0017-0014, W5J9JE-10-D-0017-0008, W5J9JE-10-D-0017-0012, W5J9LE-11-C-0001, W5J9JE-10-D-0017-0013, W5J9JE-10-D-0017-0006, W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004.

      g.    The Government will modify all contracts discussed in ¶2.c. to incorporate the terms of this Agreement.

      h.    The Government will convert the following 5 contract default terminations into no-cost terminations for convenience, as that term is described in FAR 49.109-4 and 49.603-6:

            •    W5J9JE-10-D-0017-0014
            •    W5J9JE-10-D-0017-0008
            •    W5J9JE-10-D-0017-0012
            •    W5J9JE-10-D-0017-0013
            •    W5J9JE-10-D-0017-0006

EXHIBIT B, PG. 7

      i.     The Government will waive any right it may have to further pursue through litigation its claims for reprocurement costs and liquidated damages on the Camp Zafar CSB Contract, the termination for default of which shall stand.

3.    <u>Obligations of the Appellant.</u> In exchange for the mutual promises and covenants contained herein, Appellant will take the following actions:

      a.     Appellant shall request a dismissal of the 6 ASBCA Appeals **with prejudice** within ten (10) days of the effective date of this Agreement.

      b.     Appellant will agree to be solely responsible for any and all taxes resulting from any payment relating to this agreement.

      c.     Appellant hereby certifies that no other actions concerning the disputed matters are pending and that it will execute all documents necessary to effect the payment of all verifiable, unpaid subcontractor costs to its subcontractors. Appellant further certifies no other costs will be sought.

      d.     Appellant will, in conjunction with receipt of the settlement amount, execute a Release of Claims – a sample of which is included as Attachment C to this agreement – for Contract Nos. W5J9JE-10-D-0017-0014, W5J9JE-10-D-0017-0008, W5J9JE-10-D-0017-0012, W5J9LE-11-C-0001, W5J9JE-10-D-0017-0013, W5J9JE-10-D-0017-0006, W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004.

      e.     Appellant will, within 3 days of the Government's contract modifications for the 3 T4C settlement contracts, submit a proper invoice for final payment.

      f.     <u>General Release.</u> This Agreement constitutes a full release and accord and satisfaction by Appellant including its parents, partners, affiliates, successors in interest, and assignees, of any and all claims, demands, or causes of action, actual or perceived, known or unknown, arising under or related to Contract Nos. W5J9JE-10-D-0017-0014, W5J9JE-10-D-0017-0008, W5J9JE-10-D-0017-0012, W5J9LE-11-C-0001, W5J9JE-10-D-0017-0013, W5J9JE-10-D-0017-0006, W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004, including claims for attorney's fees, as of the date of execution of this agreement by the Parties and payment of the amount as described herein. Appellant, its parents, partners, affiliates, successors-in-interest, constituent entities, and assignees, hereby remises, releases, and discharges the Government, its officers, agents, and employees of and from all civil liabilities, obligations, claims, appeals and demands which it now has or hereafter may have, whether known or unknown, administrative or judicial, legal or equitable to include attorney's fees, arising under or in any way related to Contract Nos. W5J9JE-10-D-0017-0014, W5J9JE-10-D-0017-0008, W5J9JE-10-D-0017-0012, W5J9LE-11-C-0001, W5J9JE-10-D-0017-0013, W5J9JE-10-D-0017-0006, W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004.

4.    No Admission of Liability. This Agreement does not constitute an admission of liability by either of the Parties and may not be used in any other proceeding other than to enforce its own terms.

5.    Penalty for Appellant's Breach. In the event that the Appellant breaches any of its obligations herein, the Government shall provide written notice of such breach to Appellant with a demand for Appellant to cure. Should Appellant fail to commence reasonable efforts to cure the breach within fifteen (15) days from the date of the Government's notice, Appellant shall be in breach of this Agreement and shall forfeit and return any amounts paid to it hereunder, plus interest on that amount from the date of notice of the breach from the Government, in accordance with the Contract Disputes Act. This penalty shall be in addition to any other legal remedies that may be available to the Government.

6.    Entire Agreement. This Agreement constitutes the entire agreement of the Parties and supersedes any and all prior communications, understandings and agreements relating to the subject matter hereof, whether oral or written. There are no collateral agreements, reservations, or understandings between the Government and Appellant, express or implied, oral or written, except as specifically set forth herein. No modification to this Agreement shall be binding unless it is reduced to writing and signed by the Parties to this Agreement. This Agreement is the joint product of the Appellant and the Government, and it shall not be construed against either Party to the Agreement on the ground of sole authorship.

7.    Representations. Each of the Parties, acting individually, represent and warrant as follows:

a.         It does not rely and has not relied on any statement, representation, omission, or promise of the other party (or any officer, agent, employee, representative, or attorney for the other party) in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement; it has, however, relied on this Agreement and all of its terms and provisions;

b.    It has investigated the facts pertaining to this settlement and this Agreement, and all matters pertaining thereto, to the full extent it deems necessary; and

c.    It has carefully read, knows, and understands the full contents of this Agreement and is voluntarily entering into this Agreement; and, it expressly understands that this Agreement represents the final agreement between the Parties and may not be contradicted by the evidence of prior, contemporaneous, or subsequent oral agreements.

8.    Severability. If any provision or portion of the Agreement shall be held invalid under any applicable laws, such invalidity shall not affect any other provision of the Agreement that can be given effect without the invalid provision or portion, and, to this end, the provisions or portions hereof are severable.

ACTIVE 31393960v1 01/08/2016
Government Initials:_____

EXHIBIT B, PG. 9

9.    Forum. Should either of the Parties need to resort to judicial proceedings to enforce this agreement, the forum shall be the ASBCA.

U.S. ARMY CORPS OF ENGINEERS                      ACI-SCC JV

Digi ally signed by
BODDIE.EDWARD.ALLEN.1188962900
DN: c  US, o  U.S. Governmen , ou  DoD,
ou  PKI, ou  USA,
cn  BODDIE.EDWARD.ALLEN.1188962900
Da e: 2016.02.12 08:59:58 -05'00'

BY:    Mr. Edward A. Boddie              BY:    Mr. Ibtisam M. Khafaj
       Contracting Officer                      President
       US Army Corps of Engineer s
       Middle East District

DATE: _____              DATE: _____

                                     REVIEWED BY:
REVIEWED BY:

                                     DIRK HAIRE, Esq.
JAMES D. STEPHENS                    Fox Rothchild LLP
Engineer Trial Attorney              *Appellant's Counsel*
*Respondent's Counsel*

Attachments:

Attachment A, *Appellant's 9 January 2015 Correspondence*

Attachment B, *Respondent's 26 August 2015 Correspondence*

Attachment C, *Release of Claims*



Fox Rothschild LLP
ATTORNEYS AT LAW

The Executive Building
1030 15th Street, N.W., Suite 380 East
Washington, DC 20005
Tel 202.461.3100  Fax 202.461.3102
www.foxrothschild.com

Dirk Haire
202-461-3114
dhaire@foxrothschild.com

January 9, 2015

**VIA EMAIL AND U.S. MAIL**

James D. Stephens
Assistant District Counsel
U.S. Army Corps of Engineers
Middle East District
P.O. Box 2250
Winchester, Virginia 22604-1450
James.D.Stephens@usace.army.mil

> Re:   **Contract No. W5J9JE-10-D-0017; Task Orders 1, 2, and 4 Verifiable
> Subcontractor Costs.**

Jim,

Pursuant to our prior discussions, ACI-SCC, JV (ACI) provides the following
documentation of its subcontractor costs for Task Order Nos. 1, 2, and 4 under Contract
W5J9JE-10-D-0017.

For each Task Order, ACI has provided a spreadsheet of the total amounts invoiced by
each subcontractor, the total amount paid for that subcontractor's work (based on the statement
of values submitted to USACE each pay period), and the remaining amount unpaid by USACE
for those subcontractors.  Behind the spreadsheets, are copies of the invoices for each
subcontractor listed in each spreadsheet.

The numbers in the spreadsheet may not match what ACI has requested in the past or
what the subcontractors themselves allege to be owed.  Instead, we put together only those costs
that we believe to be verifiable; namely, those that have invoices appearing to come from the
subcontractor.

In some cases, USACE has already paid ACI the full amount for a particular
subcontractor's work.  In those cases, we have stated in the spreadsheet that such work is "paid

A Pennsylvania Limited Liability Partnership

California    Colorado    Connecticut    Delaware    District of Columbia
Florida    Nevada    New Jersey    New York    Pennsylvania



**Fox Rothschild** LLP
ATTORNEYS AT LAW

James Stephens
January 9, 2015

in full." This delegation makes no representation as to whether ACI may or may not owe the subcontractor money, but whether USACE has paid ACI for that subcontractor's work.

The total amount we believe to be verifiable for Task Order No. 1 is $511,883.59

The total amount we believe to be verifiable for Task Order No. 2 is $504,382.00

The total amount we believe to be verifiable for Task Order No. 3 is $737,788.82

Please review the spreadsheets and invoices and let me know if you have any questions.

Additionally, ACI has incurred legal fees of approximately $675,000.00 to this point in connection with the terminations for convenience as well as the terminations for default. ACI would appreciate the USACE's consideration of paying our legal fees as part of the termination settlement process, as otherwise any amounts due to the subcontractors will be reduced in order to compensate Fox Rothschild according to our fee agreement with ACI. We recognize that the USACE will take some time to review the documents and we anticipate that you may have follow-up questions. We are happy to make ourselves available to sit down and discuss the documents that we've received and analyze and otherwise work with you to come to a common agreement on verifiable subcontractor costs.

Very truly yours,

Dirk Haire



**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS
MIDDLE EAST DISTRICT
P.O. BOX 2250
WINCHESTER, VA 22604-1450

REPLY TO:
CETAM-OC (Stephens)                                        26 August 2015

-VIA EMAIL-

Dirk Haire, Esq.
Jessica Haire, Esq.
Fox Rothchild LLP
dhaire@foxrothchild.com
jhaire@foxrothchild.com

SUBJECT: Resolution of ASBCA Nos. 58222, 58282, 58283, 58367, 58370, 58581, 58739, 58740, and 58741; and Termination for Convenience Settlement Proposals for Contract Nos. W5J9JE-10-D-0017-0001, W5J9JE-10-D-0017-0002, and W5J9JE-10-D-0017-0004

Dear Dirk and Jessica,

   Attached please find a copy of a proposed settlement agreement aimed at resolving all pending ASBCA appeals and providing payment to ACI-SSC JV (JV) subcontractors via escrow for verifiable subcontractor costs relating to the three Contract No. W5J9JE-10-D-0017 task orders terminated for convenience by USACE.

   As you will see, this proposal seeks to increase the overall amount of funds transferred into escrow for verified subcontractor costs by $***** *14,150.00* above the total sought by the JV in your 9 January 2015 letter to me. For Task Order No. 0001, the Government seeks to offer an amount in excess of the JV's offer.  On Task Order No. 0002, the Government is willing to accept the amount sought by the JV with one downward adjustment in the amount of $20,400.  The reasons for the difference relate to the issues described herein regarding the summary for each task order. The total amount of the settlement paid for these task orders is $****** *1,777,092.41*

   To summarize the payments as they relate to each task order:

Task Order No. 0001

   In the 9 January 2015 submission, the JV sought $520,771.59[1] in costs relating to its subcontractors' work, as follows:

---

[1] In its cover letter, the JV stated the amount was $511,883.59, but this does not correspond to the cost information included within the package.

CETAM- OC (Stephens)
SUBJECT: a/s

| Subcontractor | Amount Invoiced | Previously Paid | Balance Due |
|---|---|---|---|
| | | | |

      USACE has no issue with the JV's calculation, but proposes to make an additional payment. It appears that ███████████████████ performed work on this task order. The company has made repeated complaints to USACE that the JV did not reimburse it for work it performed. The JV did not include the company in its summary. USACE is willing to place $34,550.00 into escrow for ██████████ work. The total amount USACE is willing to placed into escrow for the JV for this task order is therefore $555,321.59 ($520,771.59 + $34,550.00).

      Payment-related records for this project indicate that USACE has deducted or withheld $556,200.84 from pay requests made by the JV due to deficient work and liquidated damages. (See attached *W5J9JE-10-D-0017-0001 Pay Estimate No. 21*) USACE is willing to release $555,321.59 from the deducted or withheld amounts to finance this settlement.

Task Order No. 0002

      In the 9 January 2015 submission, the JV sought $504,382.00 in costs relating to its subcontractors' work, as follows:

| Subcontractor | Amount Invoiced | Previously Paid | Balance Due |
|---|---|---|---|
| | | | |

CETAM- OC (Stephens)
SUBJECT: a/s

| (cont.) Subcontractor | Amount Invoiced | Previously Paid | Balance Due |
|---|---|---|---|
| | | | |

The total amount USACE is willing to place into escrow for the JV for this task order is $483,982.00. There is currently a balance on the task order sufficient to cover this amount.

## Task Order No. 0004

In the 9 January 2015 submission, the JV sought $737,788.82 in costs relating to its subcontractors' work.  USACE is willing to place into escrow for the JV this total amount for subcontractor's work on this task order.

## Summary

The JV had sought the total amount of $1,754,054.41 in subcontractor's costs. USACE is willing to place into escrow the total amount of $1,777,092.41 to be used for the reimbursement of subcontractor costs in accordance. In exchange for this payment, the JV will need to accept a termination for default on ASBCA No. 58367 relating to its performance on Contract No. W5J9LE-11-C-0001 for design and construction of the Afghanistan National Army Combat Suport Battalion facility at Camp Zafar in Herat, Afghanistan.

USACE will agree not to pursue any further reprocurement or liquidated damages claims it might have on Contract No. W5J9LE-11-C-0001, and will agree to convert the other existing terminations for default over which it administered into "no-cost" terminations for convenience settlement as described in FAR 49.109-4 and 49.603-6. The precise terms are further described in the attached draft settlement agreement.

---

[2] There is evidence in existing contract administration records that USACE paid the JV $70,000 in a pay estimate for performance apparently related to ▮▮▮▮▮▮▮▮s work. In the interest of promptly resolving this matter and avoiding the expense of heanngs on the terminations for default and ensuring the JV reimburses ▮▮▮▮▮▮ for work it performed, however, USACE is willing to place this amount in escrow.

[3] This purportedly relates to vehicles the company obtained for the project. There is no evidence that the vehicles in question were ever at the site of this task order. If there is further evidence or documentation demonstrating USACE received the vehicles, it will reconsider its position on this issue.

[4] The $20,400 related to the vehicles is omitted.

3

CETAM- OC (Stephens)
SUBJECT: a/s


Please contact me at (412) 395-7565 if you have any questions regarding my description of this proposed resolution or the draft settlement prepared. I look forward to your response.

Take care,

JAMES D. STEPHENS
Engineer Trial Attorney


End/as

4

| PAYMENT ESTIMATE - CONTRACT PERFORMANCE | | 1. INVOICE RECEIVED DATE  31 Oct 2012 | Sheet 1 of 3 |
|---|---|---|---|
| For use of this form, see ER 37 -2 -10 and ER 37 -345 -10 | | PAYMENT DUE DATE   14 Nov 2012 | |

| 2. CONTRACTOR AND ADDRESS   ACI-SCC (JV) | 3. CONTRACT NO. | 4. DISTRICT |
|---|---|---|
| BUILDING #117, NEAR SECTOR 4   KALOLA POS KABUL | W5J9JE-10-D-0017  0001 | Afghanistan South District |

| 5. DESCRIPTION OF WORK | 6. APPROPRIATION AND PROJECT | 7. REQUIRED COMPLETION DATE |
|---|---|---|
| MILCON Cargo Handling & Solid Wste  Mgt | 21-NA-2010-2350-0000 | 29 Jan 2012 |

| 8. LOCATION | 9. PERIOD COVERED BY THIS ESTIMATE | 10. JOB ORDER NO. | 11. ESTIMATE NO. |
|---|---|---|---|
| Garm Ser, Helmand Province, Afghanistan | FROM 07 Jul 2012 THRU 25 Sep 2012 | | 21 |

| ITEM NO. a | DESCRIPTION b | CONTRACT | | | TOTAL TO DATE | |
|---|---|---|---|---|---|---|
| | | QUANTITY AND UNIT c | UNIT PRICE d | AMOUNT e | QUANTITY AND UNIT f | AMOUNT g |
| | CONTRACT AMOUNT (contract line items - see attached sheets) | | | $10,020,188.00 | 84% | $8,458,055.84 |

| INCLUDES MODIFICATIONS THRU  R00007 | 84 % EARNINGS TO DATE | | | | TOTAL EARNINGS | |
|---|---|---|---|---|---|---|
| | 84 % LESS STORED MATERIAL | TOTAL CONTRACT ⟶ | | $10,020,188.00 | TO DATE ⟶ | $8,458,055.84 |

REMARKS
    1) As previously Withheld from Pay Est 20, Incinerator Activities CN00030120 ($12,500); CN00030130 ($21,000); CN 00030460 ($12,500); CN000304470 ($21,000); CN00060120 ($17,000); CN00060130 ($16,000) will continue to be withheld due to Incinerators delivered are incomplete.  total is ($100,000). CLIN 0001.

    2) As previously Withheld from Pay Est 20 - Cargo Driveway, Concrete Pavement Deficiency ($15,000).  CLIN0002.

CONTINUED ON PAGE 2...

| 12. PRESENTED FOR PAYMENT | | 14. A.  PREVIOUS DEDUCTIONS OTHER THAN RETAINED PERCENTAGE** | $206,588.00 | |
|---|---|---|---|---|
| PAYEE | PER | B.   PREVIOUS RETAINED PERCENTAGE | $0.00 | |
| ACI-SCC (JV) | | C.   PREVIOUS PAYMENTS | $7,901,855.00 | |
| DATE | TITLE | D.   PREVIOUS EARNINGS (A+B+C) | | $8,108,443.00 |
| 13. APPROVED AMOUNT | | E.   EARNINGS THIS PERIOD (TOTAL EARNINGS TO DATE MINUS D) | | $349,612.84 |
| I certify that I have checked the quantities covered by this bill or estimate; that the work was actually performed; that the quantities are correct and consistent with all previous computations as actually checked; that the quantities and amounts are wholly consistent with the requirements of the contract or other instrument involved. | | F.   LESS RETAINED PERCENTAGE | $0.00 | |
| | | G.   LESS DEDUCTION OTHER THAN RETAINED PERCENTAGE FOR | $349,612.84 | |
| | | H.   TOTAL DEDUCTIONS FOR THIS PERIOD (F+G) | | $349,612.84 |
| SIGNATURE | DATE | I.   RETAINAGE REFUNDED | $0.00 | |
| THOMAS URBANIAK COR | | J.   OTHER REFUNDS | $0.00 | |
| | | K.   TOTAL REFUNDS THIS PERIOD | | $0.00 |
| CONTRACTING OFFICER APPROVAL (Signature) | DATE | L.   AMOUNT DUE CONTRACTOR (E-H+K) | | $0.00 |
| MEHDI MIZANI Administrative Contracting Officer | | 15. RECAPITULATION: RETAINED PERCENTAGE  (B + F - I)       $0.00    TOTAL PAID  (C + L)  $7,901,855.00 OTHER DEDUCTIONS      (A + G - J) $556,200.84 | | |

ENG  FORM  93
    1 MAR 78        PREVIOUS EDITION OF THIS FORM IS OBSOLETE        **(USE REVERSE SIDE FOR DETAILED EXPLANATION AND -OR REMARKS)

| PAYMENT ESTIMATE - CONTRACT PERFORMANCE (Continuation) PAYMENT ESTIMATE REMARKS CONTINUED... | 2. CONTRACT NO. W5J9JE-10-D-0017   0001 | Sheet 2 of 3 |
|---|---|---|
| 3. CONTRACTOR AND ADDRESS   ACI-SCC (JV) BUILDING #117, NEAR SECTOR 4   KALOLA POS KABUL | 4. PERIOD COVERED BY THIS ESTIMATE FROM 07 Jul 2012 THRU 25 Sep 2012 | ESTIMATE NO. 21 |

REMARKS - CONTINUED...

3) As previously Withheld from Pay Est 20 - ACI Behind Schedule ($10,000).   CLIN 0001 and CLIN 0002.

4) Cargo Building, Structural Deficiency, Activities CN 001190140 ($73,150); CN00190150 ($20,000); CN 00190160 ($15,000). An additional ($30,000) withheld for removal/replacement of roof, siding, gutters for installation of missing structural members, totaling ($138,150). See attached. The PEMB's Structural Steel frame does not meet the requirements of Section 13 34 19, paragraph 1.4.2. Primary strucrural members shall be capable of resisting design loads.  The structure erected does not meet that requirement. The structure erected relies on secondary members, as defined in the Specification 13 34 19, to resist these loads. This deficiency was brought to ACI's attention during the 23 October 2012 Weekly Meetings. This issue has not been addressed by ACI.  Total Witheld is ($138,150). CLIN0002.

5) Amount Witheld from this Pay Est. 21 fro being behind schedule ($26,174.84). This is less than 10% of `Earnings this Period.     CLIN 0001 and CLIN 0002.

6) Liquidated Damages - See MATOC Section ---1-, paragraph 5. Liquidated damages are $628/Day. Contract Completion Date (CCD) is 29 Jan. 2012. As of 5 November 2012, Contractor 280-days beyond CCD. For this Pay Est. 22, 96-Days of Liquidated Damages are being Witheld, or ($60,288) .    CLIN 0001 and CLIN 0002.

| PAYMENT ESTIMATE - CONTRACT PERFORMANCE (Continuation) PAYMENT ESTIMATE CLIN DETAILS | | | 2. CONTRACT NO. W5J9JE-10-D-0017  0001 | | | Sheet 3 of 3 | |
|---|---|---|---|---|---|---|---|
| 3. CONTRACTOR AND ADDRESS   ACI-SCC (JV) BUILDING #117, NEAR SECTOR 4  KALOLA POS KABUL | | | 4. PERIOD COVERED BY THIS ESTIMATE FROM 07 Jul 2012 THRU 25 Sep 2012 | | | ESTIMATE NO. 21 | |

| ITEM NO. a | MOD. NO. b | DESCRIPTION CONTRACT LINE ITEMS c | CONTRACT | | | TOTAL TO DATE | |
|---|---|---|---|---|---|---|---|
| | | | QUANTITY AND UNIT d | UNIT PRICE e | AMOUNT f | QUANTITY AND UNIT g | AMOUNT h |
| 0001 | | Dwyer Cargo Handling Area | 1.00 LS | $4,154,000.00 | $4,154,000.00 | 88% | $3,661,053.75 |
| 0002 | | Dwyer Solid Waste Mgmt | 1.00 LS | $5,824,000.00 | $5,824,000.00 | 82% | $4,754,814.09 |
| 0003 | R00001 | Relocate Solid Waste Management Area | 1.00 LS | $42,188.00 | $42,188.00 | 100% | $42,188.00 |
| | | TOTALS THIS PAGE | | | 10,020,188.00 | | 8,458,055.84 |

ENG  FORM  93
1 MAR 78          PREVIOUS EDITION OF THIS FORM IS OBSOLETE          **(USE REVERSE SIDE FOR DETAILED EXLANATION AND -OR REMARKS)

| OBLIGATION ACCOUNT SUMMARY | CONTRACT NO. W5J9JE-10-D-0017   0001 | Sheet 1 of 1 |
|---|---|---|

| CONTRACTOR AND ADDRESS   ACI-SCC (JV) BUILDING #117, NEAR SECTOR 4   KALOLA POS KABUL | PERIOD COVERED BY THIS ESTIMATE FROM 07 Jul 2012 THRU 25 Sep 2012 | ESTIMATE NO. 21 |
|---|---|---|

| OBLIGATION LINE ITEM / FUNDED WORK ITEM | | This Invoice | All Invoices |
|---|---|---|---|
| **OBLIGATION LINE ITEM -**   **0001** | Earnings | $113,803.75 | $3,661,053.75 |
| | Less Retained Percentage | $0.00 | $0.00 |
| **FUNDED WORK ITEM**        94163K | Less other Deductions | $113,803.75 | $113,803.75 |
|   60000-Construction [326352] | Retainage Refund | $0.00 | $0.00 |
| | Other Refund | $0.00 | $0.00 |
| **Payment Due Date**    11/14/2012 | Amount Due | **$0.00** | **$3,547,250.00** |
| **OBLIGATION LINE ITEM -**   **0002** | Earnings | $235,809.09 | $4,797,002.09 |
| | Less Retained Percentage | $0.00 | $0.00 |
| **FUNDED WORK ITEM**        KH52LD | Less other Deductions | $235,809.09 | $442,397.09 |
|   60000-Construction [326286] | Retainage Refund | $0.00 | $0.00 |
| | Other Refund | $0.00 | $0.00 |
| **Payment Due Date**    11/14/2012 | Amount Due | **$0.00** | **$4,354,605.00** |
| **OBLIGATION LINE ITEM -**   **0003** | Earnings | $0.00 | $0.00 |
| | Less Retained Percentage | $0.00 | $0.00 |
| **FUNDED WORK ITEM**        KH52LD | Less other Deductions | $0.00 | $0.00 |
|   60000-Construction [326286] | Retainage Refund | $0.00 | $0.00 |
| | Other Refund | $0.00 | $0.00 |
| **No Payment Due** | Amount Due | **$0.00** | **$0.00** |
| | TOTALS | **$0.00** | **$7,901,855.00** |

**RMS FORM 93 SUPPLEMENT**

ATTACHMENT C





**DEPARTMENT OF THE ARMY**
U.S. ARMY CORPS OF ENGINEERS
MIDDLE EAST DISTRICT
P.O. BOX 2250
WINCHESTER, VA 22604-1450

REPLY TO:
CETAM-CT                                                                                [date]

[address]

SUBJECT:    Release of Claims for Contract No. _____

1.  Pursuant to the Terms of the Contract Contract between U.S. Army Corps of Engineers and the _____, for the work performed on the subject contracts, the undersigned hereby releases and discharges the United States of America, its officers, agents and employees, of and from all claims, liabilities, obligations and demands whatsoever or arising under or by virtue of said Contract of any modifications or change thereof.  The intent of this release is to be entirely consistent with the terms of the parties' settlement agreement with regard to all existing and potential requests for equitable adjustment or claims related to this contract.

2.  Witness the signature and seal of the undersigned this ___ day of _____ 2014.


WITNESS:                                            CONTRACTOR:

                              -SAMPLE ONLY-


_____              _____
(Print or Type) Name                              (Print or Type) Name

                              -SAMPLE ONLY-


_____              _____
(Signature)                                              (Signature)

                              -SAMPLE ONLY-


_____
(Address)




**Corporate Certificate**

I,_____, certify that I am the

_____
                 (Name)                                                  (Title)

of _____; that _____, who signed The
Contractor's

                (Name of Contractor)            (Person who signed above)

Release of Claims on behalf of the corporation; and that this company officer or owner was
authorized to

sign for said corporation by authority of its governing body, and has signed within the scope of
his corporate

powers._____ Verification Representative:

_____
         (Contractor Name)                                 (Name and Title)

SIGNATURE AND
DATE:_____

2