# Exhibit 16

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARWAND ROAD AND CONSTRUCTION COMPANY | )<br>)<br>) |
|     Plaintiff, | )<br>) |
| vs. | ) Civil Case Number:<br>)<br>) |
| ACI-SCC JV,<br>ACI-SCC JV LLC,<br>Advanced Constructors International LLC,<br>    and<br>Soufiany Construction Company | )<br>)<br>)<br>)<br>)<br>)<br>) |
|     Defendants. | ) |

## COMPLAINT

1     Plaintiff ARWAND ROAD AND CONSTRUCTION COMPANY, also known as ARWAND ROAD CONSTRUCTION COMPANY also known as ARWAND ROAD & CONSTRUCTION COMPANY also known as ARWAND CONSTRUCTION LTD. ("Plaintiff ' or "ARCC"), by and through its undersigned counsel, hereby files this Complaint against Defendants ACI-SCC JV, ACI-SCC JV LLC, Advanced Constructors International LLC ("ACI"), and Soufiany Construction Company ("SCC") (collectively "Defendants"), and in support thereof avers as follows:

## PARTIES

2     Plaintiff ARCC is a foreign corporation with its principal place of business in Herat, Afghanistan.

3     Defendant ACI-SCC JV is a joint venture undertaken by ACI, a Delaware Limited Liability Company and Soufiany, a construction company based in Kabul Afghanistan. The joint venture was a single business transaction for the mutual benefit of ACI and SCC because they both knew that they lacked the skill and experience required to individually be awarded projects from

USACE, and they used their joint skill and experience to obtain contracts. ACI-SCC JV represented to the US Government that ACI and SCC had contracted to share income, expenses and liabilities that may arise from the joint venture.

4	ACI-SCC JV LLC is a Delaware Limited Liability Company with its principal place of business located at 3422 Old Capitol Trail, Suite 556, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

5	This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6	Venue is proper before this Court because the Defendants resides in this judicial district and a substantial part of the acts and/or omissions giving rise to ARCC's claims took place in this judicial district.

## FACTS COMMON TO ALL CAUSES OF ACTION

### Relevant Contracts and Key Provisions

7	In 2011, Plaintiff believes that Defendants entered into a prime contract with the United States Army Corps of Engineers ("USACE"), Contract No. W5J9JE-10-D-0017 (the "Prime Contract") for a variety of unspecified construction services to be performed in Afghanistan.

8	When USACE seeks to have a specific project performed on Defendants' contract, it issues a Task Order.

9	In 2011, USACE task order 0013, a project titled Afghanistan National Army ("ANA") Utilities Upgrade at Camp Zafar, Herat Province, Afghanistan.

10  Between July 26, 2011, and March 31, 2012, Defendants entered into five contracts with ARCC (the "Subcontracts") to perform certain services and provide materials in support of Defendant's performance obligations under the Prime Contract. The contract values were $500,000.00, $64,291.00, 262,855.60, 92,890.75 and $1,201,039.80. A true and correct copy of the Subcontracts is attached as Exhibits 1 to 5.

11  Unbeknownst to ARCC, at the time ARCC negotiated the Subcontract with Defendant, Defendant was already behind in paying many of its subcontractors on the Project and its Prime Contract was in danger of being terminated for default by the USACE.

12  ARCC's scope of work under the Subcontract included materials, labor, transportation and security for the construction projects.

13  The Subcontract included payment terms that required Defendant to pay ARCC on a monthly basis within fifteen days of Defendant's receipt of ARCC's invoice. The Subcontract did not contain any retainage or holdback clauses but required Defendant to pay ARCC's invoices in full within net 15 days for work completed.

14  The Prime Contract with the USACE is governed by the Prompt Payment Act at 31 U.S.C. 3901-7. The 1988 amendments to the Prompt Payment Act provide an additional form of payment protection for subcontractors on federal construction contracts by requiring federal agencies to include in their contracts a clause obligating the prime contractor to pay the subcontractor for satisfactory performance after receiving payment from the government.

15  The Subcontract incorporated by reference certain clauses flowed down from the Prime Contract, including Federal Acquisition Regulation ("FAR") 52.232-27, Prompt Payment for Construction Contracts, subsection (c) (1) that provides " Prompt payment for subcontractors. A payment clause that obligates the Contractor to pay the subcontractor for satisfactory performance

under its subcontract not later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract."

16     The Subcontract does not contain any provision allowing Defendant to withhold or retain amounts owed to ARCC for satisfactorily completed work under the Subcontract.

ARCC's Performance of the Subcontract

17     ARCC began performance on one of the Subcontracts in or around September 2011.

18     At the inception of each contract, Defendants told Plaintiff that the work needed to be expeditiously completed and that the Plaintiff should make arrangements for the deployment of its personnel and purchase the materials that were required for the contract.

19     At Defendants' instruction, ARCC purchased the materials required to complete the projects and deployed personnel to the site. ARCC proequipment and supplies required under the Subcontract and otherwise fulfilled all of its obligations pursuant to the requirements of the Subcontract.

20     Defendants accepted all supplies and materials delivered and work performed by ARCC and at no time made ARCC aware of any alleged defects or deficiencies with respect to any part of ARCC's performance under the Subcontract.

21     On a regular basis, Plaintiff's representative met with Defendants' representatives to review the progress of Plaintiff's work. Defendants approved Plaintiff's completed work or a percentage of the work in progress completed, of work completed and approved the work completed.

22     Pursuant to the Subcontract invoicing and payment terms, ARCC submitted monthly invoices to Defendant requesting payment for the materials, supplies and work provided by ARCC and accepted by Defendant during the prior month.

23	Plaintiff and other subcontractors made multiple requests for payment, and Defendants delayed payments and claimed that it had not been paid by the government and failed to pay the invoices.

24	USACE told Defendants that they were deficient in the performance of the Prime Contract, including but not limited to Defendant's failure to adequately staff the Project, failure to adhere to the required Project schedule, and failure to timely pay Defendant's subcontractors, among other issues.

25	Unbeknownst to ARCC, the USACE issued a show cause notice alleging many of the same issues including nonpayment of subcontractors and threatening to terminate Defendants' Prime Contract for default.

26	ARCC completed 60% of the project work at a value of $1,342,778.81, but had not billed for all the amounts due based on Defendants' promises to pay and requests to delay further invoices.

27	In anticipation of the construction work that was yet to be completed, ARCC purchased materials that had not been used and were not included in the cost of the work completed for $240,800. The materials were purchased at a time of high demand due to the on-going US Construction projects in Afghanistan, and the materials demanded by USACE are of a quality that is significantly higher than that used in the local market. At this time the value of the materials is equal to the cost to transport them from the site leaving no net value.

28	ARCC submitted invoices to Defendants in the amount of $994,761.10 for 44.45% of the completed projects and was paid $222,603.00. Defendants' requested that ARCC continue to work on the projects and defer additional invoices.

### Defendant's Termination of the Subcontract

29  The USACE terminated Defendant's Prime Contract for default and ordered Defendant to stop all work under the Prime Contract. The contract was terminated for default due to Defendant's failure to adequately man the project, failure to meet the required project schedule and failure to pay its subcontractors, among other failings.

30  ARCC did not contribute to the problems that led USACE to terminate Defendant's Prime Contract, nor was it in any way responsible for the USACE's decision to terminate the Prime Contract for default. ARCC had timely progress on its Subcontracts and all work performed by ARCC had been accepted by Defendant and the USACE. The USACE, on information and belief, paid Defendants for the work performed by ARCC.

31  Defendants made no further payments to ARCC in connection with the Subcontract, despite repeated requests for payment of the monies owed for the services and materials provided by ARCC.

### Defendant's Failure to Pay ARCC

32  At no time did Defendants ever notify ARCC of any alleged defects or deficiencies with respect to its performance under the Subcontract.

33  In fact, Defendants repeatedly acknowledged to ARCC that it owed ARCC an unpaid balance on the Subcontracts, and stated that the reason they did not pay was due to lack of funds. Defendants repeatedly told ARCC in calls and in person meetings that the reason Defendants could not timely pay ARCC was because Defendants had not been paid by USACE for the services and materials ARCC provided. Defendants repeatedly told ARCC that once they were paid by USACE, Defendants would in turn pay ARCC. Notwithstanding Defendants' claims of nonpayment form the

USACE, the Subcontract terms do not condition payments to ARCC upon Defendant's receipt of payment from USACE.

34  Defendants made numerous promises to pay ARCC for the unpaid balance on the Subcontract, but despite those promises have not made such payment to ARCC.

35  On information and belief, Defendant received payments from USACE for all of the work performed by ARCC under the Subcontract.

36  After waiting months for payments from Defendant that never arrived, ARCC contacted the USACE to inquire about the status of payments for services and materials ARCC provided under its Subcontract.

37  Despite repeated ARCC's demands for payment from ARCC, Defendant failed to pay ARCC the outstanding balance under the Subcontract, which was, and is, due and owing to ARCC for the services and materials it provided under the Subcontract.

## COUNT ONE - BREACH OF CONTRACT

38  ARCC incorporates Paragraphs 1 through 37 as if fully stated herein.

39  ARCC performed all of its obligations pursuant to the terms of the Subcontracts in a timely and professional manner, and in accordance with all of the Subcontract terms.

40  Pursuant to the payment terms in the Subcontract, Defendants were required to make payment to ARCC within 15 days of its receipt of invoice from ARCC.

41  ARCC submitted proper and timely invoices for work it performed during the previous month.

42  ARCC made a proper demand for payment to Defendants, and Defendants failed to pay.

43      Defendants failed without justification to timely pay ARCC's invoices and for work in progress in the amount of $1,341,239.58.

44      Defendants failure to make timely payment is a material breach of the Subcontracts.

45      WHEREFORE, ARCC requests judgment against Defendants in the amount of at least $1,341,239.58, plus interest, costs and attorney's fees, and any other relief which the Court deems just and proper.

## COUNT TWO - QUANTUM MERUIT

46      ARCC incorporates Paragraphs 1 through 45 as if fully stated herein.

47      Alternatively, if Defendants are not liable to ARCC for breach of contract, Defendants are liable to ARCC for *quantum meruit.*

48      As a subcontractor to Defendants, ARCC provided valuable services and materials to Defendants.

49      Defendants had reasonable notice that ARCC expected compensation for the services and materials it provided to Defendants, and for the materials that it purchased to fulfill the terms of the Subcontracts.

50      Defendants wrongfully retained the benefit of the materials and services provided by ARCC without paying fair compensation to ARCC for those materials and services.

51      It would be manifestly unfair and unjust for Defendant to retain the benefits of the materials and services provided by ARCC without compensating ARCC in an amount to be determined at trial, but in no event less than $1,341,239.58.

52  WHEREFORE, ARCC requests judgment against Defendant in amount to be ascertained at trial, plus interest, costs and attorney's fees, and any other relief which the Court deems just and proper.

## COUNT THREE - MONEY HAD AND RECEIVED

53  ARCC incorporates Paragraphs 1 through 52 as if fully set forth herein.

54  As a subcontractor under Defendants' Prime Contract, ARCC provided valuable services and materials to Defendant, which Defendants accepted, thereby receiving the benefit of those services and materials.

55  Defendants received money from their customer, USACE, for the materials and services ARCC provided under the Subcontract.

56  USACE intended that its payments will be used to pay the Prime Contractor, subcontractor, material suppliers and all other vendors engaged by Defendants. USACE required Defendants to represent that it had paid subcontractors or that payments received would be used to pay subcontractors, including ARCC.

57  As part of Defendants' invoices to the USACE, was their representation that either they had paid ARCC, and that no money was due from Defendants, or that Defendants would make payments to ARCC out of the money that they received from USACE.

58  Defendants received money from USACE, but it was not used for the benefit of ARCC.

59  Defendants were holding money paid by the USACE that in equity and good conscience belongs to ARCC. Defendants have not used the money paid by USACE for ARCC"s

materials and services or for its intended purpose by USACE and continues to unlawfully and unjustly hold the money due to ARCC.

60  WHEREFORE, ARCC seeks the imposition of a constructive trust over Defendant's funds in an amount to be determined at trial that is equitable equivalent to the monies Defendant has wrongfully retained from the USACE.

## COUNT FOUR - CONVERSION

61  ARCC incorporates Paragraphs 1 through 60 as if fully set forth herein.

62  Defendants were paid money by the USACE that they were required by contract and by law to transfer to ARCC.

63  The money transmitted to Defendants from the USACE was expressly for the benefit of, and rightfully belonged to ARCC, and Defendants did not have the right to divert or withhold that money.

64  ARCC had a right to the money that Defendants received from USACE.

65  Defendants repeatedly made false statements to ARCC that they had not received payment for any of ARCC's services and that Defendants would pay ARCC as soon as they received payment from the USACE for those services. These statements were false at the time Defendants made them since Defendants had already been paid by the USACE for ARCC's services and materials.

66  Defendants intentionally and substantially interfered with ARCC's property when it taking possession of the money from the USACE for ARCC's benefit and failed to pay ARCC.

67	Instead of paying the money to ARCC for its services and materials, Defendants wrongfully retained and/or diverted the money that was specifically intended for the benefit of ARCC and continues to wrongfully withhold the money and refuses to tender it to ARCC.

68	The money Defendants converted for their own use was specific chattel because USACE's money was delivered to Defendants for payment to ARCC, and was intended to be kept segregated and substantially in the form in which it was received.

69	ARCC did not consent to Defendants' conversion.

70	The money USACE paid to Defendants for ARCC's services and materials were not the subject of any title claim by Defendants.

71	Defendants knew or should have known that its failure to pay ARCC the money that it received from USACC would cause harm to ARCC and that ARCC would incur costs in its attempt to recover the funds including consultants to investigate the claim, and attorneys to recover possession of the money. There is nothing that ARCC could have done to prevent the harm caused by Defendants' conversion.

72	As a direct and proximate result of Defendants' conversion, ARCC was damaged in an amount to be determined at trial.

73	ARCC requests the fair market value of the property at the time that Defendants took possession of the money, interest from the time that Defendants' converted the property, reasonable compensation for ARCC's time and money spent to recover the money, and attorney's fees. ARCC is further entitled to an award of punitive or exemplary damages due to Defendants' intentional, oppressive and malicious conduct in unlawfully converting money specifically designated for ARCC for its own use.

## COUNT FIVE - FRAUD

74     ARCC incorporates Paragraphs 1 through 73 as if fully set forth herein.

75     In or around May 2013, Defendants stopped paying ARCC's invoices for services and materials ARCC provided under the Subcontract.

76     On numerous occasions between May 2013, and present, ARCC demanded payment of its unpaid balance and was repeatedly told by Defendants that ARCC would receive payment as soon as USACE paid Defendants for that work. Defendants falsely denied that they had received payment from USACE for ARCC's services and materials.

77     Defendants' statements to ARCC that they had not received payment from USACE and that Defendant would pay ARCC as soon as payment was received from USACE were false, as Defendant never had any intention of paying ARCC the balance of its unpaid invoices or other costs.

78     Defendants knew at the time they made the aforementioned statements to ARCC regarding future payments that those statements were false.

79     Defendants made the aforementioned false statements to ARCC with the intention that ARCC would rely upon those statements and would continue to support Defendants in Defendants' pursuit of its own claims against the USACE for liquidated damages and unpaid retainage.

80     ARCC did in fact reasonably rely upon Defendants' false statements regarding future payments of the amounts owed to ARCC, and ARCC incurred substantial damages as a result.

81     Defendants' intentional misrepresentations in order to induce ARCC to assist Defendants in pursuing its own claims against USACE constitute fraud, for which Defendant is liable to ARCC.

82     On information and belief, Defendants were simultaneously defrauding all of its other subcontractors on multiple projects and induced them to assist Defendants in pursuing their claims against USACE.

83     Accordingly, Defendants are liable to ARCC for damages resulting from Defendants' false statements, in an amount to be determined at trial, plus interests, costs and attorney's fees.

Defendant's conduct in defrauding ARCC is egregious and additionally entitles ARCC to an award of punitive damages in an amount to be determined at trial.

WHEREFORE, ARCC requests judgment against Defendant in an amount to be determined at trial, plus punitive damages in an amount to be determined at trial, plus interest, costs and attorney's fees, and any other relief which the Court deems just and proper.

## COUNT SIX – STATUTORY BREACH OF THE FEDERAL PROMPT PAYMENT ACT AND FEDERAL ACQUISITION REGULATION 52.232-27

84     ARCC incorporates Paragraphs 1 through 83 as if fully set forth herein.

85     The Project is subject to the Federal Prompt Payment Act at 31 U.S.C. 3901 et seq., (the "Prompt Payment Act") which was included in the Prime Contract and which has also been incorporated by reference into the Subcontracts.

Federal Acquisition Regulation ("FAR") 52.232-27, Prompt Payment for Construction Contracts, subsection (c) (1) that provides " Prompt payment for subcontractors. A payment clause that obligates the Contractor to pay the subcontractor for satisfactory performance under its subcontract not later than 7 days from receipt of payment out of such amounts as are paid to the Contractor under this contract."

86      Pursuant to the Prompt Payment Act and Federal Acquisition Regulations, Defendants were required to pay ARCC within seven days of Defendants' receipt of payment for the services and materials provided by ARCC under the Subcontract.

87      The Prompt Payment Act also provides that Defendants are liable to ARCC for interest on any late payments made more than seven days after Defendants received payment from USACE for the services and materials provided by ARCC.

88      On information and belief, Defendants received payment from USACE for the services and materials provided by ARCC under its Subcontract.

89      Defendants failed to make timely payments to ARCC for services and materials furnished under the Subcontracts, in violation of their Subcontract obligations under the Prompt Payment Act and Federal Acquisition Regulations.

90      Accordingly, Defendants have materially breached the Subcontracts by failing to timely pay ARCC for amounts paid by USACE for ARCC's services and materials, and further are liable for interest payments on the amounts Defendants received from USACE but failed to pay ARCC.

WHEREFORE, ARCC respectfully requests that the Court enter judgment in favor of ARCC for the amounts Defendants received from USACE and failed to pay ARCC, in an amount to be determined at trial, as well as interest on the unpaid amounts, costs and attorney's fees, and any other relief which the Court deems just and proper.

### COUNT SEVEN – EQUITABLE ASSIGNMENT AND TRANSFER OF "PASS-THROUGH" CLAIM RIGHTS

91      ARCC incorporates Paragraphs 1 through 90 as if fully set forth herein.

92      Defendants ACI and ACI-SCC JV LLC are Delaware Limited Liability Companies that lack Registered Agents and whose Articles of Formation has been canceled by the Delaware Secretary of State. Plaintiff believes that Defendant SCC is defunct. Defendant ACI-SCC JV is a joint venture of ACI and SCC.

93      The USACE entered into a contract with Defendants and Defendants entered into subcontracts with ARCC.

94      USACE's contract with Defendants provided that there is no contract privity between USACE and any other party, including subcontractors such as ARCC.

95      ARCC believes that Defendants contract was terminated by the USACE for default, as a result of Defendants' failure to pay subcontractors such as ARCC.

96      ARCC believes that when USACE determined that Defendants had not paid their subcontractors, that USACE halted all future payments to Defendants in addition to amounts that it had retained during the on-going construction. USACE is holding money for the benefit of Defendants' subcontractors, however, the subcontractors are blocked from pursuing their claim by the USACE's claim of contract privity.

97      ARCC has requested that Defendants either bring a claim on ARCC's behalf or allow Defendants' rights to assert a claim to "pass-through" to ARCC.

98      In order for ARCC to assert its right for payment on Defendants' contract with USACE, there must be at least two court ordered assignments. The first assignment is Defendants' right to challenge the termination for default with the USACE. The second is Defendants' rights against USACE for the amounts that Defendants' owe ARCC.

99       ARCC has no adequate remedy at law in that, through no fault of its own, the sole right to pursue ARCC's claim against the USACE is reserved solely to the Defendants as a result of the Prime Contract.

WHEREFORE, ARCC respectfully requests that the Court assign to ARCC all of Defendants' legal rights related to challenge the termination of their contracts, all rights to assert ARCC's claims for payment against USACE for funds due to Defendants and ARCC, all of Defendants' other rights that are necessary to challenge the termination or bring a claim and any other relief which the Court deems just and proper.

Dated: May 3, 2016


/S/ Vivian A. Houghton
Vivian Houghton, Esquire (DE ID #2010 )
800 N. West Street, 1st Floor
Wilmington, DE 19801
302.658-0518
vivianhoughton@comcast.net

Counsel for Arwand Road and Construction Company
Plaintiff