## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ACI-SCC JV AND** | ) | |
| | ) | |
| **ACI-SCC JV LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 17-1749C** |
| | ) | **(Judge Wheeler)** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## _MEMORANDUM IN SUPPORT OF INTERVENOR'S MOTION TO DISMISS_

This Memorandum in Support of Intervenor's Motion to Dismiss is filed by the real parties in interest here, ACI-SCC JV and ACI-SCCJV LLC (together, the "JV"). The party filing this suit, Arwand Road and Construction Company ("Arwand," "the Trustee," or the "Subcontractor") is not a party in interest to this case. The JV has separately filed its own Motion to Intervene pursuant to Rules of the Court of Federal Claims --RCFC 24(a) and RCFC 17.

The JV moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) for lack of standing/subject matter jurisdiction, Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted, and Federal Rules of Civil Procedure 12(b)(3) Improper Venue. Alternatively, as the real party in interest, the JV voluntarily withdraws the suit filed by Arwand pursuant to Federal Rule of Civil Procedure 41.

# I. INTRODUCTION

## A. The Issues

This entire case can be summarized as an attempt by Arwand, a subcontractor to a terminated government contractor, to subvert all established conventions of government contract law. It should be summarily dismissed because:

- Arwand lacks standing to bring this suit; it does not have the required privity with the US Government;

- Arwand's attempt to seek compensation as a subcontractor directly violates the Anti-Assignment of Claims provisions applicable to all federal contracts in 41 USC 6305;

- Arwand has not gone through the procedure of requesting a novation agreement under the Assignment of Claims Act.  That is a complete bar to the current action.  The federal government has already made full payments under the contract and will not grant a novation under any circumstances;

- This Anti Assignment issues are a matter of federal law; state trustee law must give way to this federal law;

- Arwand had previously filed suit under the same facts and issues at the Armed Services Board of Contract Appeals and was dismissed there;

- Arwand did not make any realistic attempt to serve the correct parties in interest in its previous Delaware suits.  This is a constructive fraud on the parties in this case;

- Arwand misrepresents critical facts about Plaintiffs in this current suit in a manner that amounts to fraud;

- Arwand is in any event, in the wrong forum; and

- This entire suit is brought to deceive the Court into thinking Arwand has acted in a regular fashion – in fact, everything that it has done has been irregular, deceptive, and intended to not abide by federal contract law.

## B. The Parties

This Motion is brought by undersigned counsel of the JV, the original prime contractor to the government contract. The JV has today separately filed its own Motion to Intervene pursuant to Rules of the Court of Federal Claims --RCFC 24(a) and RCFC 17.

The JV's interests are directly contradicted in this suit as Arwand is now claiming it alone has exclusive rights under the prime contract, and that it alone "is the sole authorized entity with capacity to do business, enter into contracts, maintain lawsuits and receive payments on [the JV's] behalf." *See* Memorandum in Support of Plaintiffs' Trustee's Motion for Partial Summary Judgment at 19. This is not true. The JV has rights to wrap up its company business, and Arwand, a subcontractor with no privity to the government, cannot usurp those rights.

In its Complaint, Arwand alleges it began work as a subcontractor to JV back in July 2011, and that JV was not paying Arwand per their agreement. *See* Complaint ¶ 32, 35.  The contract between the JV and the US Army Corps of Engineers ("USACE"), under which this dispute arises, was terminated for default by the USACE back in 2012, and the JV notified Arwand of its termination.

Arwand had every opportunity to raise a dispute and file suit against the JV between the period when it first believed it was being unfairly compensated by the JV to the time the JV was cancelled in 2015; it did not. Now, years after the contract was terminated for default and the JV dissolved, Arwand files suit against the United States government for compensation. But the law

is clear that a subcontractor on a government contract cannot sue the government; the only proper method of recourse is to raise a dispute with the prime. For this reason alone, Arwand's case should be immediately dismissed.

Arwand has now also deceptively plead its Complaint in a manner that combines the JV with another company, Advanced Constructors International LLC ("Advanced").  In the preceding cases to the current litigation in the US District Court of Delaware and the Delaware Court of Chancery, Arwand sought joint and several liability against both the JV and Advanced seemingly working on an erroneous assumption that Advanced and the JV were somehow working together on their separate contracts. The JV and Advanced are separate entities, and the JV has no knowledge of Advanced's current affairs. To erroneously conflate the two distinct companies and to claim the JV is also somehow responsible for Advanced's alleged failings is at best not factual and at worst, fraudulent.

## II. ARGUMENT

### A.  Standard of Review

In order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)), and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

To survive a motion to dismiss for lack of standing, "the plaintiff must 'clearly ... allege facts demonstrating' each element [of standing]." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016). "The party invoking federal jurisdiction

bears the burden of establishing [the] elements [of standing]." *Myers Investigative and Sec. Servs.,*
*Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (citing *Lujan v. Defenders of*
*Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

Moreover, "[i]n ruling on a 12(b)(6) motion to dismiss, the Court must accept as true the
complaint's undisputed factual allegations and should construe them in a light most favorable to
the plaintiff." *Cambridge v. United States*, 558 F.3d 1331, 1335 (Fed. Cir. 2009).

In the current case, no matter what the factual allegations are, the case is subject to
immediate dismissal. Plaintiff's suit is barred by federal law as discussed below in detail.

**B.  The Court should grant this Motion to Dismiss for lack of standing as Arwand was a
subcontractor to the JV and lacked the required privity of contract with the
government.**

The JV moves to dismiss under FRCP 12(b)(1) for lack of subject matter jurisdiction due
to Arwand's lack of standing. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)
("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1),
because standing is a jurisdictional matter.").  The required elements to establish proper standing
are:

> First, the plaintiff must have suffered an "injury in fact" . . . Second, there must be
> a causal connection between the injury and the conduct complained of . . . Third, it
> must be "likely," as opposed to merely "speculative," that the injury will be
> "redressed by a favorable decision."

*Lujan*, 504 U.S. 555 at 560–61 (citations omitted.).

To have standing to sue the sovereign on a contract claim, a plaintiff must be in privity of
contract with the United States. *Anderson v. United States*, 344 F.3d 1343, 1351 (Fed. Cir. 2003).
"It is a hornbook rule that, under ordinary government prime contracts, subcontractors do not have
standing to sue the government under the Tucker Act." *Erickson Air Crane Co. of Washington v.*
*United States*, 731 F.2d 810, 813 (Fed. Cir. 1984).

This case should be immediately dismissed for lack of standing as Arwand was a subcontractor to the JV, and thus never had privity with the government. *See Anderson*, 344 F.3d 1343 at 1351; *Erickson*, 731 F.2d 810 at 813. For this reason, the Court cannot redress any alleged injury. *See Lujan*, 504 U.S. 555.

The USACE has always dealt with the JV – the real party to the contract in question, and not Arwand, from the inception of the prime contract, and the USACE has permitted payments to various subcontractors for the prime contractor based on the prime contract. To tell the government that it has now paid the wrong parties and must start over is absurd – – yet that is exactly what Arwand is arguing for.

And this is exactly why there is an Anti-Assignment Act, to prevent this from taking place, so the government always knows who it is dealing with – – the original contractor, until it approves otherwise. The contract is not in Arwand's or the Trustees name, and thus it has no right to proceed in this Court.

Further, without a novation agreement approved by the government, Arwand/ Subcontractor has no right to act in a contract action on behalf of the prime. The Anti-Assignment Act - 41 USC § 6305(a) states:

> (a) General prohibition on transfer of contracts.--The party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party. A purported transfer in violation of this subsection annuls the contract or order so far as the Federal Government is concerned, except that all rights of action for breach of contract are reserved to the Federal Government.

41 U.S.C.A. § 6305 (West). The JV never transferred its contract rights to Arwand, and the Federal Government never consented to such assignment. "The soundest and most accepted method of establishing recognition by the Government [of contract assignment] is for all three parties to enter

into a novation agreement." *Tuftco Corp. v. United States*, 614 F.2d 740, 745 (Ct. Cl. 1980). Arwand never made any attempt to enter into a novation, nor would the federal government approve such novation as it has already made payments to the existing contractor to settle a series of cases.

Being unable to establish standing, this Court should grant this Motion to Dismiss.

**C.  The Court should grant this Motion to Dismiss as Arwand's Complaint fails to state a claim for which relief can be granted.**

**a.  Arwand has not gone through the procedure of requesting and being granted, a novation agreement. Arwand's actions are violative of The Anti-Assignment Act - 41 USC § 6305.**

The JV restates its argument above of Section II (B). For the reasons already stated due to Arwand's lack of standing, this Court cannot provide relief between a dispute with a subcontractor and the government pursuant to the Tucker Act and the case law interpreting it. Having not stated a claim for relief with a proposed result that would not violate federal law, this Court should grant this Motion to Dismiss.

**b.  The United States Anti-Assignment Act takes precedent over state law dealing with trustees; this is a matter of federal preemption.**

There is long-standing federal law, the Anti-Assignment Act, the Contracts Disputes Act and its progeny of case law, the Severin Doctrine[1], etc., that all deal with who is in charge of an individual contract – – the original awardee – – until the government agrees otherwise. A subcontractor on a government contract is not a "contractor" by definition of the government, and without privity, has no right of action against the United States or its agencies. These federal laws

---

[1] "If the subcontractor did have a claim against the Government, it could not transfer that claim to another person, plaintiffs, for example, since assignment of such claims is forbidden by statute." *Severin v. United States*, 99 Ct. Cl. 435, 442 (1943).

contradict Arwand's claim that it now has rights to sue on behalf of the original awardee by virtue of state trustee law because practically speaking, Arwand's theory amounts to an unenforceable constructive assignment.

Despite Arwand's clever theory, it cannot use state trustee law as a vehicle to defy federal law without running into the issue of federal preemption. "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law . . . or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 2617, 120 L. Ed. 2d 407 (1992). This is one such case where Congress has clearly left no room for states to contradict federal contracting law, and the federal laws take precedence over state trusteeship matters.

### c. The relief sought by Arwand is in no case available as the USACE issued a termination for default of the prime contract.

It is undisputed that the prime contract for which Arwand/Subcontractor now, allegedly has rights, was terminated in 2012 for default. Arwand, in its Complaint, acknowledges that it was a subcontractor for Task Order 13 of the contract, Complaint ¶ 8 ("Arwand was a subcontractor to Plaintiffs on contract W5J9JE-10-D-0017 task order 0013."), which indisputably resulted in a default termination.

The JV did not challenge the default, yet it was a final decision.  The ninety days and one-year periods under the CDA to challenge such a final default decision have now long expired. Both the government and JV accordingly resolved the remainder of their issues related to the contract years ago. The time to challenge the termination for default of Task Order 13 has come and gone. Even if Arwand could now, years after termination, challenge the default termination, it does not

plead facts that amount to a challenge of the default termination nor state a basis for a challenge. For this reason, the Court should grant this Motion to Dismiss.

### D. The Court should grant this Motion to Dismiss as the Court of Federal Claims is the Improper Venue.

In effect what Arwand is attempting to do is relitigate all or portions of the Settlement Agreement. But the Settlement Agreement specifically states in its Forum Clause that the ASBCA will hear any disputes and debate concerning the agreement.[2] The party in interest has already elected to go to the ASBCA under the CDA; that is a final and binding election. The party in interest may not change its mind now and go to the Court of Federal Claims even if it wanted to; that is foreclosed by the statute.

Further, in accordance with the Settlement Agreement, the JV has already requested a dismissal with prejudice of the six ASBCA appeals. If Arwand's intention is to upset the settlement agreement and the JV's dismissals at the ASBCA, then the proper venue would first be the ASBCA, and then perhaps, the Federal Circuit, the appellate court. In either case, the Court of Federal Claims is the wrong forum to redress any alleged injury by Arwand. For this reason, the Court should grant this Motion.

### E. This entire suit is brought to deceive the Court into thinking Arwand has acted in a regular fashion – in fact, everything that it has done has been irregular, deceptive, and intended to not abide by federal contract law. The Court should grant this Motion to Dismiss under a theory of Plea in Fraud.

Plea in Fraud arises from 28 U.S.C. § 2514. The statute reads, "[a] claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance

---

[2] "Forum. Should either of the Parties need to resort to judicial proceedings to enforce the agreement, the forum shall be the ASBCA." Settlement Agreement between ACI-SCC JV, LLC and USACE at ¶ 9.

thereof." 28 U.S.C. § 2514. To prove plea in fraud, the government must show that Arwand knowingly presented a false claim with the intention of being paid for it. *See Commercial Contractors, Inc. v. United States,* 154 F.3d 1357, 1362 (Fed.Cir.1998). "The Government's burden is to 'show that the contractor made false or fraudulent statements in the claim that was submitted, with intent to deceive or mislead the Government.'" *Daewoo Eng'g & Const. Co. v. United States*, 73 Fed. Cl. 547, 584 (2006), *aff'd*, 557 F.3d 1332 (Fed. Cir. 2009) (citing *Commercial Contractors,* 154 F.3d at 1362.).

The Department of Justice and this Court has a ready method to deal with all current maneuvering that Arwand has undertaken. This is an appropriate circumstance to raise a special plea of fraud in bar to this suit. The Department of Justice should do so, and this suit should be over.

### a. Arwand's Complaint, as it relates to the JV's relationship with another named Plaintiff, is misleading.

Arwand attempts to mislead the government by attributing alleged failures of Advanced with the JV. In all of its pleadings, Arwand has combined allegations against Advanced and JV as if they were one entity working together, and in fact, Arwand sought joint and several liability against both the JV and Advanced. The JV is not in any way currently affiliated with Advanced nor were they during course of contract performance. They are two separate entities, and to erroneously attribute any of Advanced's alleged failings to the JV is fraudulent and grounds for a plea in fraud.

### b. Arwand's actions related to a previous suit at the Armed Services Board of Contract Appeals were deceptive.

As stated in its Memorandum for Summary Judgment, Arwand filed a petition at the ASBCA under the same underlying facts and issues and then "made the strategic decision to

dismiss its ASBCA case, without prejudice, and to wait for Arwand's appointment as Trustee. On April 27, 2017, the ASBCA dismissed . . . without prejudice." Memorandum in Support of Plaintiffs' Trustee's Motion for Partial Summary Judgment at 19.

Although this does not appear to be *res judicata*, the Court should be aware Arwand, and its counsel, have been to the ASBCA to pursue these same claims.  They were informed by USACE counsel that their suit would not prevail because there were already settlement agreements in place settling all of the JV's claims.  They deceptively then dismissed those claims at the ASBCA without prejudice so they could re-file the same claims in the Court of Federal Claims. This violates the "either-or choice of forum" understanding of the CDA,

> Courts have consistently interpreted the CDA as providing the contractor with an either-or choice of forum . . . Thus, once a contractor makes a binding election to appeal the CO's final decision to a board of contract appeals or to the Court of Federal Claims, the contractor can no longer pursue its claim in the other forum.

*Bonneville Assocs. v. United States*, 43 F.3d 649, 653 (Fed. Cir. 1994) (citations omitted).

Both this Court and the Department of Justice should take note of these improper actions and deceptive activities by Arwand and its counsel.  They apparently have decided to file lawsuits wherever they possibly can and see if anything will stick.  It will not—they are years too late.

### c. Arwand did not make any realistic attempt to serve the correct parties in the Delaware suits.  This is a constructive fraud on the parties in this case.

If one wants to attempt to proceed with a lawsuit to gain property interests, one must give the other parties against whom the suit is directed a fair and reasonable opportunity to know what is happening in the lawsuit, and to respond if they choose. *See Gibbs v. Coupe*, 316 F.R.D. 84, 86 (D. Del. 2016) ("A defendant may file a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(5) when a plaintiff fails to properly serve him or her with the summons and complaint.") Also, "lack of oversight by counsel" and "inadvertence of counsel does not constitute good cause." *Braxton v.*

*United States*, 817 F.2d 238, 242 (3d Cir. 1987), and there is no good cause "when the failure [to properly serve] is due to counsel's inadvertence or half-hearted efforts . . ." *In re Lenox Healthcare, Inc.*, 319 B.R. 819, 822 (Bankr. D. Del. 2005); *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S. Ct. 2706, 2712, 77 L. Ed. 2d 180 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.").

Arwand has proceeded in a deceptive fashion to only give the barest attention to serving the correct parties in interest and giving them adequate notice of issues in the suit. As best as we can tell, in relation to Arwand's prior suit against the JV at the District Court of Delaware, it wrote one letter to what it perceived to be JV's counsel. This is not an adequate attempt at service of process; it is simply correspondence. That is inappropriate. Further, this lone letter does not disclose the nature of actions being pursued, the consequences of not responding to service of process, who the real parties in interest may be, nor who has been inquired of.

Besides the lone letter, no attempts of service of process were made—no process servers, no sheriff, no Court official was given notice and utilities to make a valid service of process. This case should have been dismissed at the District Court for lack of service.

We can only assume Arwand did this on purpose—they did not want a response. Instead, it wanted to serve the Secretary of State where it knew it would get no response and no opposition. Failure to properly serve is a fraud upon the Court. The JV here could file suit in Delaware to have the suit set aside under applicable state law. Rather than do that, it raises this issue with the Court of Federal Claims. The Court of Federal Claims, as with every court, has the right to examine

another court's judgment to see whether it was properly entered. In this case, it is obvious that it was improperly entered because no proper service of process was attempted.

### III. CONCLUSION

For the foregoing reasons, this Court should grant Intervenor's Motion to Dismiss. If the Court finds that alternatively, as the real party in interest, the more appropriate action is a voluntary withdrawal of the suit, then the JV voluntarily withdraws this suit improperly filed by its subcontractor Arwand.

Respectfully submitted,
/s/ Donald C. Holmes
Donald C. Holmes
Attorney for ACI-SCCJV
and ACI-SCCJV LLC


Holmes Pittman & Haraguchi, LLP
110 Mill Street, P.O. Box 279
Greensboro, MD 21639
(410) 482-9505
dch@dcholmes.com


Dated and Filed: February 27, 2018

## *Certificate of Service*

I hereby certify that on this 27th day of February, 2018, I served a true copy of this

*Memorandum in Support of Intervenor's Motion to Dismiss* in accordance to the electronic filing

system and on the following via email and Priority mail with delivery confirmation:

>Walt Pennington
>Pennington Law Firm
>3302 30th Street
>San Diego, CA 92104-4535
>wpennington@pennfirm.com
>
>Attorney for Plaintiffs

And on the following via email:

>Michael D. Austin
>Trial Attorney
>Commercial Litigation Branch
>Department of Justice
>PO Box 480
>Ben Franklin Station
>Washington, D.C. 20530
>(202) 616-0321
>michael.austin@usdoj.gov
>
>Attorney for Defendant

>/s/ Donald C. Holmes
>Donald C. Holmes

14